646 A.2d 1257

**Stephen F. GUADAGNINO, II,**

v.

**Elizabeth MONTIE, Appellant.**

Superior Court of Pennsylvania.

Argued April 27, 1994.

Decided Aug. 22, 1994.

604

Elizabeth Montie, appellant, pro se.

Gregory B. Fraser, Warren, for appellee.

Before ROWLEY, President Judge, and CIRILLO and OLSZEWSKI, JJ.

CIRILLO, Judge:

Elizabeth Montie (Mother) appeals from an order entered in the Court of Common Pleas of Warren County awarding primary physical custody of Stephen F. Guadagnino, III (Child) to Stephen F. Guadagnino, II (Father).[1] We affirm.

Mother and Father are the natural parents of Child, who was born on July 9, 1991. Mother and Father have never been married, but resided together for a period of time in

---

1. The notice of appeal also reflects that, along with the September 14, 1993 order, Mother is also appealing from the order denying the transfer of jurisdiction entered on September 23, 1993.

1991. Upon termination of the relationship,[2] temporary physical custody was placed primarily with Mother, with weekly visitation awarded to the Father at the paternal grandparents' residence in Warren County, Pennsylvania. Father filed a complaint for custody. Prior to the hearing scheduled for August 19, 1992, Mother began the process of moving with Child to Columbus, Ohio. After hearing the testimony of Mother, Father, and the paternal grandmother, the custody mediator found that Mother's proposed move would not enhance the quality of life for Mother and Child.[3] Rather, the mediator recommended that Child's best interests would be served by remaining in Warren County, Pennsylvania, or alternatively, in Erie, Pennsylvania, where Child had significant contacts. Furthermore, the mediator's report set forth: "Should the mother choose to move to Columbus, Ohio, which the Mediator concludes is the move which is least beneficial for the child, the Mediator would recommend that the parties be afforded shared custody with the child spending six months with each parent as the parties may choose...."

Mother took exceptions to the mediator's recommendations and a second hearing was held on October 9, 1992. Between the time the exceptions were taken and the hearing date, Mother moved with Child to Columbus, Ohio. Following the hearing on Mother's exceptions, President Judge Robert L. Wolfe modified the mediator's recommendations. Specifically, Judge Wolfe directed that custody would be equally shared for *six week periods* of time, and that the paternal grandparents would transport the child until such time as Mother secured a means of transportation.

The record reflects that in the months following the October 9, 1992 hearing, Mother attempted to obstruct the transfer of custody, telephoned Father with questions challenging his fitness as a parent, and was, generally, confrontational. As a

**2.** A protection from abuse order was entered against Father on November 8, 1991.

**3.** In reaching this conclusion, the mediator was guided by *Gruber v. Gruber*, 400 Pa.Super. 174, 583 A.2d 434 (1990), which sets forth the guidelines under which a parent having primary physical custody of a child may relocate to another jurisdiction.

result, Father filed a petition for contempt. In addition to Father's request that Mother be found in contempt, the petition also requested an order placing primary physical custody of Child with Father.[4]

A hearing on the petition for contempt was held on September 14, 1993, again before President Judge Wolfe. Finding Mother's conduct to be in contempt of his prior order, President Judge Wolfe ordered that primary physical custody be transferred to Father, with reasonable, but supervised, visitation accorded to Mother. It was also ordered that Mother be placed in the Warren County Jail, to be released upon Child's transfer to Father.

Following the contempt hearing, Mother apparently filed a request (although it is not a part of this record) with the Ohio courts to assume jurisdiction of the custody matter. In response to an inquiry by an Ohio Court of Common Pleas judge, and pursuant to a letter of record dated September 23, 1993, President Judge Wolfe declined to relinquish jurisdiction to the Court of Common Pleas of Franklin County, Ohio.

Mother, appealing *pro se*, has raised five issues for our consideration. Because many of her claims overlap, we have condensed these issues:

(1) Whether the trial court's order finding Mother in contempt of a prior custody order, and transferring custody to Father, was an abuse of discretion?

(2) Did the trial court err in refusing to relinquish jurisdiction of this matter to Ohio pursuant to the Uniform Child Custody Jurisdiction Act?

■ In her first issue, Mother argues that the trial court erred in finding her in contempt of the October 9, 1992 order. Mother specifically claims that such a conclusion was not supported by evidence of record. Alternatively, Mother con-

---

4. This document, which is labeled "Petition for Contempt," sets forth numerous allegations and concludes with the following:

WHEREFORE, Petitioner requests your Honorable Court to enter an Order holding Respondent/mother in contempt **and placing primary physical custody of the parties' minor child with Petitioner.** (emphasis added).

tends that, assuming she was in contempt of the October 9, 1992 order, a transfer of custody was not the appropriate sanction for such a violation.

We begin with an analysis of the trial court's determination that Mother was in contempt of the October 9, 1992 order. A trial court's finding on a contempt petition will not be disturbed absent an abuse of discretion. *Steele v. Steele*, 376 Pa.Super. 174, 177–79, 545 A.2d 376, 378 (1988); *Kozlowski v. Kozlowski*, 362 Pa.Super. 516, 524 A.2d 995 (1987); *Mellott v. Mellott*, 328 Pa.Super. 200, 476 A.2d 961 (1984). Here, we have reviewed the testimony and can find no reason to characterize the court's decision on the contempt issue as an abuse of discretion.

The record reflects that, on the day of the October 9, 1992 hearing, Father, along with other members of his family, was to meet Mother and the maternal grandmother in Erie, Pennsylvania so that custody of the child could be transferred to Father. Instead, Mother went to a police station in Erie and claimed that Father was threatening her with guns and knives and was attempting to kidnap her child. As a result, Father's step-mother, who had gone into the police station while Father waited in the car, was told that unless Father had papers to prove that he had custody rights, there was nothing that the police could do to help.[5] Ultimately, a copy of Judge Wolfe's order was faxed to the police station, and Mother was forced to relent. On another occasion, Mother and Father had agreed on a meeting date, place, and time for transferring Child to Father. Mother did not show up at the agreed upon transfer point in Lodi, Ohio, where Father waited for an hour and a half before returning home. The next day, after filing a copy of the trial court's order in an Ohio courthouse, the paternal grandparents, Father's girlfriend, and Father met Mother in a restaurant parking lot. After a thirty minute confrontation, during which the local police were called, Child

---

**5.** The Erie police officers also asked Father if he was in possession of any weapons. A police officer himself, Father showed them his service revolver, which was locked in the trunk, along with identification. There were no other weapons in the car.

was transferred to Father. Additionally, Father testified that he felt that Mother continually opposed his right of access to Child, that she telephoned Father with a frequency that bordered on harassment, and that she was confrontational with Father in front of Child. Accordingly, we find that the trial court did not abuse its discretion in adjudicating Mother in contempt of the October 9, 1992 order.

Mother next argues that, assuming a finding of contempt, such a finding does not warrant a change in custody. Our paramount concern in this case, as in all custody determinations, is that the best interests of the child be served. *Commonwealth ex rel. Pierce v. Pierce*, 493 Pa. 292, 295, 426 A.2d 555, 557 (1981). Furthermore,

> [t]he scope of review of an appellate court reviewing a child custody order is of the broadest type; the appellate court is not bound by the deductions or inferences made by the trial court from its findings of fact, nor must the reviewing court accept a finding that has no competent evidence to support it.... However, this broad scope of review does not vest in the reviewing court the duty or privilege of making its own independent determination.... Thus, an appellate court is empowered to determine whether the trial court's incontrovertible factual findings support its factual conclusions, but it may not interfere with those conclusions unless they are unreasonable in view of the trial court's factual finding; and thus, represent a gross abuse of discretion.

*McMillen v. McMillen*, 529 Pa. 198, 202, 602 A.2d 845, 847 (1992) (citations omitted).

█ In support of her argument, Mother relies primarily upon *Lampert v. Lampert*, 409 Pa.Super. 552, 598 A.2d 561 (1991). Specifically, she highlights the following language:

> The fact that Mother violated the custody order issued by [the trial judge] is, as noted by the trial court, an appropriate foundation for a finding of contempt, *however, it cannot be the basis for an award of custody. Rosenberg v. Rosenberg*, 350 Pa.Super. 268, 504 A.2d 350 (1986).

*Lampert,* 409 Pa.Super. at 563, 598 A.2d at 566 (emphasis added). In *Lampert,* this court went on to point out that the trial court was not the court which made the original custody award, and that the trial court issued its order directing a change in custody without the benefit of a full hearing on the matter. Accordingly, the matter was remanded for a custody hearing so that the trial court judge could be provided with information regarding the parties' past history, their present circumstances, and their abilities to care for the children. *Id.* at 566–67, 598 A.2d at 568.

Here, unlike *Lampert,* President Judge Wolfe had the benefit of presiding over both the October 9, 1992 hearing on Mother's exceptions, after which the proposed custody schedule was modified, *and* the September 14, 1993 contempt hearing. In fact, the record reflects that President Judge Wolfe referred back to the testimony of the October 9, 1992 hearing in reaching his conclusions. A review of the transcripts from both hearings reveals adequate information regarding Mother's and Father's past history, their present circumstances, and their respective abilities to care for the children. A review of the contempt hearing transcript indicates that the testimony elicited focused primarily on the contempt issue. It was made clear, however, both in Father's petition for contempt and during the contempt hearing, that Father was also requesting primary custody. Thus, the contempt hearing served a dual purpose. This is evident from the trial judges conclusions:

> [T]his Court has listened to testimony that tells the Court that two or three times with the child present you [Mother] have staged a scene, have become disruptive, have not cooperated, have done everything possible to prevent this child from going with the father. The child is two years old, I don't know of any other case that this Court has had that [there] has been such outrageous contempt. . . . Now, the Court is not going to impose monetary sanctions, that isn't the proper remedy. The issue before this Court is the welfare of this child. This child has a right to grow up in a peaceful, proper environment to become a productive citi-

zen. The Court must follow the law concerning that growth, physically, morally, healthwise, mentally and physically. There is no doubt in this Court's mind if this type of conduct continues this child is going to be psychologically devastated for life and this Court concludes the cause of it is the mother's attitude and conduct.... The mother has absolutely refused to cooperate without constant effort on behalf of the father and there is nothing in this record that would show that it's not going to stop in the future.... So the Court does find for all these reasons the Respondent ... is in contempt of the Court order of October 9, 1992 and that the only proper remedy can be is that the primary, physical custody of the child is placed with the father.

We find it necessary, at this point, to distinguish this case from *Kozlowski v. Kozlowski*, 362 Pa.Super. 516, 524 A.2d 995 (1987). There, as in the instant case, the petition filed by the father requested that the mother be found in contempt *and* that custody be transferred to the father. Separate hearings were held on the contempt issue and the custody issue. When no determination was made after the custody hearing, father filed a brief entitled "Brief in Support of Custody and Petition for Contempt." In response to this brief, the trial judge combined the actions and issued an order finding the mother in contempt and transferring custody of the children to the father. This court affirmed the finding of contempt but reversed and remanded on the issue of custody. Specifically, this court opined that the wording of the order and opinion evidenced that the change in custody was a sanction for contempt, rather than the carefully weighed and deliberated process that should be taken in a custody hearing. *Id.* at 519–20, 524 A.2d at 997. Ultimately, this court concluded:

[T]he trial judge, in his opinion did state what he believed to be in the children's best interest, however, a thorough analysis of the evidence was clearly lacking. In fact, very few references were made, in the trial court opinion, as to the findings of fact relied upon by that court in rendering its decision. Without a more complete record, and an analysis

thereof, it is difficult for this court to arrive at a decision regarding the conclusions drawn by the court below.

*Id.* at 521, 524 A.2d at 998. Without a more complete record, therefore, this court was not able to arrive at a decision regarding the conclusions drawn by the trial court.

Here, the trial judge's conclusions refer to the change in custody as "the only proper remedy" for Mother's contempt. While we disapprove of the trial judge's choice of words, the record reflects that, unlike *Kozlowski,* there were sufficient facts in the record to substantiate the trial judge's finding that a change in custody was in the best interests of the child. "A custody order is modifiable without proof of a substantial change in circumstances where such a modification is in the best interests of the child." *McMillen,* 529 Pa. at 202, 602 A.2d at 847; *see Karis v. Karis,* 518 Pa. 601, 544 A.2d 1328 (1988) (eliminating the requirement that a petition for modification of an existing court order must allege a substantial change of circumstance). Additionally, this court has pronounced that a custodial parent's obstruction of the noncustodial parent's right to visit a child may serve as a basis for a change in custody. *Kozlowski,* 362 Pa.Super. at 518–20, 524 A.2d at 997 (citing *Pamela J.K. v. Roger D.J.,* 277 Pa.Super. 579, 419 A.2d 1301 (1980)).[6]

Specifically, it has been stated that:

When a custodial parent so obstructs the visits between the child and the non-custodial parent that the best interests of the child are no longer being served, a change of custody is

---

**6.** In *Rosenberg v. Rosenberg,* 350 Pa.Super. 268, 504 A.2d 350 (1986), this court pronounced:

Willful interference with court ordered visitations, no matter how deplorable, cannot be made the basis for an "automatic" change of custody. "[A] change of custody is just as important to the child and to others as an original award of custody, and the parties should be afforded the same type of hearing on the subsequent application as they are entitled to an original award."

*Id.* at 274, 504 A.2d at 353 (citation omitted).

Again, the hearings held in this case adequately served to reveal the evidence necessary for both a finding of contempt and change in custody. This is not a case, therefore, where an ordered change in custody was "automatic."

warranted. Moreover, an obstruction of the right to visit the child is especially serious where, as in the present case, a court visitation order has been entered. A custodial parent who wilfully ignores a visitation order and obstructs the child's visits with the non-custodial parent is little different from the parent who ignores a court order awarding custody and by force or trick snatches the child from the other parent. In both instances, extra-legal means are used to defeat the other parent's established legal rights. Such conduct will not be tolerated by this court.

*Pamela J.K.*, 277 Pa.Super. at 593–94, 419 A.2d at 1309. Clearly, the trial court here was convinced that primary physical custody with Father was in the child's best interests, and we agree that the record supports this result. *McMillen*, *supra*.

Although the procedure by which Father requested a change in custody has not been challenged by Mother, we find that it would be helpful to the outcome of this case to review and distinguish the law on this subject. In *Choplosky v. Choplosky*, 400 Pa.Super. 590, 584 A.2d 340 (1990), we stated:

> [T]he appropriate manner to bring about a change in a custody/visitation Order is by petition for modification, which would follow, generally the procedure under Pa. R.C.P. 1915.3, Commencement of Action. *However, this does not prevent the trial court, under appropriate circumstances to alter a custody/visitation Order when it is in the best interest of the child to do so.*

*Id.* at 593–94, 584 A.2d at 341 (emphasis added) (quoting *Steele v. Steele*, 376 Pa.Super. 174, 545 A.2d 376 (1988)). In *Choplosky*, the appellant (father) alleged violations by appellee (mother) of their custody agreement; a hearing on appellant's contempt petition followed. At the conclusion of the contempt hearing, the trial court entered an order modifying the custody agreement so as to grant sole legal custody to Mother. Father appealed, contending that the trial court deprived him of his right to due process by modifying a custody order in the absence of a written petition to do so. This court agreed, holding that while it is generally true that to promote the best

interests of the child modification of custody orders may be entertained at any time, courts may not allow parties to forgo general notice requirements which must otherwise be strictly observed. *Choplosky,* 400 Pa.Super. at 594–96, 584 A.2d at 342; *see also Seger v. Seger,* 377 Pa.Super. 391, 547 A.2d 424 (1988) (following a hearing on a petition for contempt, trial court lacked authority to modify custody/visitation order absent filing of petition for modification by any party to order); *Steele, supra* (appropriate manner to bring about change in custody/visitation order is by petition for modification).

While each of the above cited cases was remanded so that the correct procedure could be followed, there is nothing in these cases to suggest that a change in custody was requested along with or in addition to the petitions for contempt. Accordingly, in these cases, unlike the case now before us, there was no notice at the contempt hearings that the custody order itself was at issue until the hearings were underway. *Choplosky, supra.* There was adequate notice that the custody order would be challenged in the instant case. Here, the trial court had before it the request that custody be transferred, and conducted the "contempt" hearing accordingly; the hearing was tailored to the issues at hand. We do not find it necessary, therefore, to remand for reinstatement of the original custody order so that another hearing can be held on the petition for modification of custody; such action would result in a waste of judicial resources.

■ Mother next challenges the trial court's denial of transfer of jurisdiction to Ohio, pursuant to the Uniform Child Custody Jurisdiction Act (UCCJ), 23 Pa.C.S.A. § 5344. When reviewing a trial court's decision regarding jurisdiction under the UCCJ, the trial court's decision will not be reversed absent an abuse of discretion. *Merman v. Merman,* 412 Pa.Super. 247, 603 A.2d 201 (1992); *Joselit v. Joselit,* 375 Pa.Super. 203, 544 A.2d 59 (1988). We find no reason to disturb the trial court's decision not to relinquish jurisdiction to the Ohio courts.

Pursuant to section 5344 of the UCCJ, the bases for jurisdiction can roughly be characterized as (1) "home state" jurisdiction, (2) jurisdiction founded upon "significant contacts" among the parties to the custody action and the locale in which the action has been brought, and (3) "parens patriae" jurisdiction.[7] *Tettis v. Boyum*, 317 Pa.Super. 8, 13–15, 463 A.2d 1056, 1059 (1983).[8] Here, Warren County, Pennsylvania was clearly the appropriate venue when the initial custody complaint was filed; Mother, Father, and Child were all living in Warren County at the time. Following the initial custody action, Child maintained significant contacts with Warren County from October, 1992 to March, 1993, when Mother and Father alternated physical custody of Child on an equal basis. The paternal grandparents, who have had substantial contacts with Child, also reside in Warren County. Moreover, three different hearings regarding custody have been held in Warren County. Based on these circumstances, we find that Warren County adequately serves as Child's home state on a part-time basis, and fulfills the significant contacts require-

7. It is apparent that the third basis for jurisdiction is inapplicable to the instant case. The "parens patriae" basis for jurisdiction refers to those situations where a child is abandoned, abused, or dependent.

8. These bases for jurisdiction are derived from 23 Pa.C.S.A. § 5344, which provides, in pertinent part:
   (a) General rule.—A court of this Commonwealth which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if:
   (1) This Commonwealth:
   (i) is the home state of the child at the time of commencement of the proceeding; or
   (ii) had been the home state of the child within six months before commencement of the proceedings and the child is absent from this Commonwealth because of his removal or retention by a person claiming his custody or for other reasons, and a parent or person acting as parent continues to live in this Commonwealth;
   (2) it is in the best interest of the child that a court of this Commonwealth assume jurisdiction because:
   (i) the child and his parents, or the child and at least one contestant, have a significant connection with this Commonwealth; and
   (ii) there is available in this Commonwealth substantial evidence concerning the present or future care, protection, training and personal relationships of the child....
   23 Pa.C.S.A. § 5344(a)(1), (2).

ment.  The trial court did not abuse its discretion in denying Mother's request to relinquish jurisdiction.

Accordingly, we affirm the trial court's order finding Mother in contempt and awarding primary physical custody to Father.