### DiFilippo v. DiFilippo

C.P. of Montgomery County, no. 87-09710.

*Michael P. Ballezzi,* for plaintiff.
*Andrew B. Cantor,* for defendant.

SALUS, *J.,* April 28, 1995—This appeal stems from the court's order of December 8,1994, finding defendant Nicoletta DiFilippo in contempt of two prior court orders. Defendant first contends that the court's order does not provide her with a realistic possibility of purging herself of contempt. Second, defendant argues that the order improperly requires her to relinquish custody of her child without a hearing. Third, defendant contends that the order improperly requires her to remove a pending petition to modify filed in New York. Finally, defendant complains that the court improperly set counsel's fees at a rate higher than that requested by plaintiff Italo DiFilippo. Defendant's contentions are addressed below.

## FACTUAL AND PROCEDURAL HISTORY

Plaintiff and defendant are engaged in a prolonged internecine war regarding the custody and visitation of their son Florindo. This chapter of the conflict centers around plaintiff's visitation rights pursuant to court orders of November 20, 1990 and December 13, 1993. The November 20, 1990 order of the Honorable Stanley R. Ott of the Montgomery County Court of Common Pleas awarded primary physical custody of Florindo to defendant, who resides in Brooklyn, New York. Plaintiff, who resides in King of Prussia, Pennsylvania, was awarded monthly visitation. Plaintiff was burdened with the responsibility of picking up and dropping off Florindo at the commencement and conclusion of each visit.

By order of December 13, 1993, this court modified the existing visitation order by awarding plaintiff an additional visit per month and providing that Florindo's travel between New York and Philadelphia be done by train. This order has since been reversed by the Superior Court.

Plaintiff filed an emergency petition for contempt on November 22, 1994, alleging, inter alia, that defendant had refused plaintiff visitation since September 16, 1994 and had further refused to allow Florindo to speak with plaintiff on the telephone. The petition requested an order adjudicating defendant in contempt and further directing that primary physical custody of Florindo be transferred to plaintiff. A hearing on the petition was scheduled before the court for December 8, 1994.

Defendant, as is her custom, refused to appear at said hearing. Defendant, contrary to the advice of counsel, instead announced in advance her unwillingness

to appear before this court despite its continuing jurisdiction. As a result of defendant's absence, only plaintiff testified at the hearing, subject to the cross-examination of defendant's counsel. Plaintiff testified that he had not seen his son since September 16, 1994. N.T. 12/8/94 at 9. Pursuant to the court orders of November 20, 1990 and December 13, 1993, plaintiff was entitled to visitation with Florindo on four weekends plus the Thanksgiving holiday during this time. *Id.* at 11-16. Defendant, however, denied plaintiff any contact with Florindo during this period, including by letter or telephone. *Id.* at 11-16, 25-26.

Plaintiff further testified that he has never harmed his son in any way, that he loves his son, and that they get along well together. *Id.* at 19-21. It is noted by the court that summer visitation with Italo and the boy went smoothly and without incident, and no resistance to visitation with the father occurred until Florindo returned to school and the bosom of his mother's household, his New York friends, teachers, and religious activities. Plaintiff described Florindo's home in Brooklyn as a row home with half of the first floor converted to a video store, and stated that 10 people live there. *Id.* at 22-24. Counsel for defendant introduced no evidence.

At the conclusion of the hearing, the court found defendant in contempt of the orders of November 20, 1990 and December 13, 1993. The court further found that it was in the best interests of Florindo that he be temporarily placed in the custody of plaintiff, and ordered defendant to pay plaintiff's counsel fees. To purge herself of the contempt, defendant was required to appear, with Florindo, at a hearing scheduled for December 16, 1994. Further, defendant had to agree to comply with the order of November 20, 1990 and

submit to a psychological exam of herself, plaintiff and Florindo for the purpose of exploring abuse allegations. Finally, the court required defendant to appear at a hearing in January of 1995, which would alleviate the need for a hearing in New York, "to examine visitation and custody and abuse so as to set aside all parental manipulations and to establish a common ground for a healthy and workable visitation/partial custody arrangement in the best interest of Florindo." This appeal followed.

## DISCUSSION

Defendant does not challenge the court's finding of contempt, either substantively or procedurally, in her concise statement of matters complained of on appeal. The only questions presented on appeal are (1) whether the court's order gives defendant a realistic possibility of purging herself of contempt, (2) whether the order improperly requires defendant to relinquish custody of her child without a hearing, (3) whether the order improperly requires defendant to withdraw a petition pending in New York, and (4) whether the order sets improperly high counsel fees.

Defendant first contends that the court did not provide her with a realistic possibility of purging herself of contempt. Civil contempt orders must contain conditions that will permit the contemnor to purge himself or herself of contempt. *Steel v. Weisberg,* 368 Pa. Super. 590, 594, 534 A.2d 814, 816 (1987), *appeal dismissed,* 525 Pa. 503, 582 A.2d 648 (1990). In civil contempt proceedings, a court may not convert a coercive sentence into a punitive one by imposing a condition that the contemnor cannot perform. *Wetzel v. Suchanek,* 373 Pa. Super. 458, 464, 541 A.2d 761, 763 (1988).

In this case, defendant was given every opportunity to purge herself of contempt. The primary requirement for defendant to purge herself of contempt was that she merely show up for a hearing on December 16, 1994. At such hearing, defendant would be required to affirm her obedience to the visitation order of November 20, 1990. Thereafter, defendant would have to submit, along with plaintiff and Florindo, to a psychological examination by a neutral examiner for the purpose of aiding the court in the resolution of this matter. Finally, in January of 1995, plaintiff would have to appear again before the court for a complete hearing on the custody and visitation issues. These requirements are plainly reasonable and are aimed only to coerce defendant to proceed with the case. The requirements are necessary to compel defendant to abandon her tactic of ignoring the court's directives and simply staying put, with Florindo, outside of the court's jurisdiction.

Defendant next contends that the court's order improperly requires her to relinquish custody of her child without a hearing. Defendant received her hearing on December 8, 1994. Defendant chose not to attend this hearing, however, stating in advance her unwillingness to appear.

What defendant is likely attempting to argue is that a separate hearing on the custody and visitation issues, addressing a petition to modify, is required before the court may enter an order transferring custody from defendant to plaintiff. While the court recognizes that changes in custody or visitation orders are more commonly achieved through a petition for modification pursuant to Pa.R.C.P. 1915.3, the court is not precluded under appropriate circumstances from altering such an order if it is in the best interests of the child. *Steele v. Steele,* 376 Pa. Super. 174, 179, 545 A.2d 376, 378 (1988).

The Superior Court has recently examined the propriety of a trial court transferring custody of a child in the course of a contempt hearing. In *Guadagnino v. Montie,* 435 Pa. Super. 603, 646 A.2d 1257 (1994), the Superior Court determined that where a litigant is given adequate notice that a custody order will be challenged in the course of a contempt hearing, and where the trial judge is adequately familiar with the history of the case, the trial court may transfer custody at the conclusion of the contempt hearing when it is in the best interests of the child. *Id.* at 608-13, 646 A.2d at 1260-62. Further, the Superior Court stated that to remand a case under such circumstances for another hearing on a petition for modification of custody "would result in a waste of judicial resources." *Id.* at 613, 646 A.2d at 1262.

Here, there is no question that this court is intimately familiar with the details of this case. The court has held numerous hearings and conferences on this matter, and issued the order of December 13, 1993 that served as part of the basis for the December 8, 1994 contempt hearing. There is also no question that defendant received adequate notice that custody and visitation issues would be addressed at the December 8, 1994 hearing. As found by the *Guadagnino* court, plaintiff's inclusion in his petition for contempt of a request for a change in custody gave defendant adequate notice that this issue would be examined at said hearing. *Id.* at 610-13, 646 A.2d at 1260-62.

Finally, the court correctly determined that a temporary change in custody was in the best interests of Florindo. The court heard testimony that defendant had deprived Florindo of any contact with his father for several months. Further testimony indicated that Florindo lived in a Brooklyn row home shared by 10

people. Defendant's attorney introduced no evidence from any neutral party familiar with both sides of the case that plaintiff's custody of Florindo would be in any way harmful to the child. Defendant herself chose not to appear at all. Clearly, the record reflects sufficient facts to substantiate the court's finding that a change in custody was in the best interests of the child. Further, the court talked to the judge in New York regarding this matter and, because of this jurisdiction's long term acquaintance with this case and handling of this case, New York relinquished its interests to Pennsylvania readily. Letters from a general practitioner who treats Florindo and his parish priest were not considered by this court because they were ex parte, not subject to cross-examination, and further were generated at the behest of defendant to avoid appearance before this court then and in January.

The court's action is also supported by Pa.R.C.P. 1915.13. Rule 1915.13 permits a trial court to award temporary custody, partial custody, or visitation at any time after the commencement of the custody action. Pa.R.C.P. 1915.13. Such special relief is particularly appropriate where the situation is such that temporary modification of custody "would preserve the well-being of the children involved while the parties prepare to resolve more permanently the question of where and/or with whom the children should remain." *Choplosky v. Choplosky,* 400 Pa. Super. 590, 597, 584 A.2d 340, 343 (1990).

The court's order accomplishes just this. Although the court's order does not explicitly state that the transfer of custody is temporary, a further reading of the order clearly demonstrates the court's intent. Part four of the order provides that defendant must appear on December 16, 1994 to affirm "that she will again resume visitations

per Judge Ott's original order and transportation arrangements as well as holiday and summer visitations as provided." Judge Ott's order of November 20, 1990 provides defendant with primary custody of Florindo. Plainly, the court's order contemplates a return to this arrangement in the near future. Additionally, the court's order states that the visitation and custody issue will be further addressed at a hearing in January of 1995. The change of custody, to temporarily remove Florindo from the manipulations of defendant, was precisely the type of measure permitted by Rule 1915.13.

Defendant next contends that the court's order improperly requires defendant to remove her pending petition to modify in New York. Defendant misunderstands, however, the nature of the court's order. The court was attempting only to convince defendant to appear before this court, which has continuing jurisdiction in the matter, to attempt to resolve any issues before defendant went forward with a duplicative action in New York. The court noted that defendant "can reschedule whatever she wants [in New York] if she does not get the satisfaction from the proceeding in Pennsylvania." N.T. 12/8/94 at 38. In any case, this issue is likely moot, as defendant has failed to comply with any of the terms of the court's order, including a refusal to appear at the hearing held on December 16, 1994.

Finally, defendant contends that the court improperly ordered defendant to pay plaintiff's counsel fees in the amount of $3,000. An award of attorney's fees and costs is an appropriate punishment for contempt. See *McCusker v. McCusker,* 428 Pa. Super. 506, 513-15, 631 A.2d 645, 648-49 (1993). Any difference in the amount of attorney's fees awarded by the court and the amount requested by defendant is attributable to the court's inclusion of factors such as court costs and

the repeated nature of defendant's contempt, and was within the discretion of the court.

For the foregoing reasons, this court's order of December 8, 1994 should be affirmed.