J-S33003-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| GLADYS D. OROZCO | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| OCTAVIO G. ARAGON | : | No. 727 MDA 2024 |

Appeal from the Order Entered April 22, 2024
In the Court of Common Pleas of Dauphin County Civil Division at No(s):
2019-CV-10160-CU

BEFORE:  OLSON, J., KUNSELMAN, J., and NICHOLS, J.

MEMORANDUM BY OLSON, J.:                **FILED: DECEMBER 3, 2024**

Appellant, Gladys D. Orozco ("Mother"), appeals from the April 22, 2024 order denying her request to relocate and to modify her custody arrangement with Octavio G. Aragon ("Father") regarding the parties' child, A.G. (the "Child").  We affirm.

Mother and Father are the natural parents of the Child, born April 2018. On October 19, 2020, the parties entered into a custody agreement, pursuant to which Mother and Father shared legal custody of the Child and Mother had primary physical custody, subject to Father's period of partial custody. Father's periods of partial custody amounted to "four [] overnights every two-week[s]."  Trial Court Opinion, 4/22/24, at 1.

Thereafter,

> [o]n December 5, 2023, Mother filed a notice of proposed
> relocation seeking to move to Wisconsin.  In that notice, Mother
> stated that she planned to move to Wisconsin where she has

significant family support and [planned to take] over the family cleaning business, which [would] substantially improve her financial condition. On December 14, 2023, Father filed a counter-affidavit, objecting to Mother's relocation. [Upon prompting by the trial court,] Mother filed a petition to modify custody on February 2, 2024.

*Id.* (unnecessary capitalization omitted).

Trial on Mother's proposed relocation and petition for modification convened on March 11, 2024 and March 29, 2024, during which Mother, Father, and multiple family members testified. Ultimately, the trial court denied Mother's relocation request. In addition, the trial court modified the parties' custody agreement, altering the periods of the parties' physical custody of the Child as follows:

(i.) Week One: Father shall have the [C]hild from 9:00 a.m. on Sunday through 9:00 a.m. on Wednesday; Mother shall have the [C]hild from 9:00 a.m. on Wednesday through 9:00 a.m. on Sunday;

(ii.) Week Two: Father shall have the [C]hild from 9:00 a.m. on Sunday through 9:00 a.m. on Thursday; Mother shall have the [C]hild from 9:00 a.m. on Thursday through 9:00 a.m. on Sunday;

(iii.) Other times as the parties mutually agree.

Trial Court Custody Order, 4/22/24, at 2. This timely appeal followed.

Mother raises the following issues on appeal:

1. Whether the trial court abused its discretion and committed an error of law in denying Mother's petition for relocation despite the uncontroverted testimony that the relocation would significantly enhance the [Child and Mother's] quality of life[,] . . . and that Father's objection to the relocation was self-serving rather than in [the Child's] best interest?

2. Whether the trial court abused its discretion and committed an error of law in modifying the parties' current custody arrangement after denying Mother's petition for relocation?

Mother's Brief at 2-3 (unnecessary capitalization omitted).

On appeal, Mother challenges the trial court's order denying her petition for relocation and modifying the parties' custody agreement. Our scope and standard of review of custody determinations is well-settled.

> [O]ur scope [of review] is of the broadest type and our standard [or review] is abuse of discretion. This Court must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, this Court must defer to the trial [court that] presided over the proceedings and[,] thus[,] viewed the witnesses [firsthand]. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.
>
> ***
>
> With any child custody case, this Court has long stated that the paramount concern is the best interests of the child. This standard requires a case-by-case assessment of all [] the factors that may legitimately affect the physical, intellectual, moral and spiritual well-being of the child. When a custody dispute involves a request by a party to relocate, we have explained, there is no black[-]letter formula that easily resolves relocation disputes[. R]ather, custody disputes are delicate issues that must be handled on a case-by-case basis.

*C.M.K. v. K.E.M.*, 45 A.3d 417, 421 (Pa. Super. 2012) (quotation marks, citations, and original brackets omitted).

Section 5337(h) of the Pennsylvania Domestic Relations Code, 23 Pa.C.S.A. §§ 5321-5340, sets forth the factors that a trial court must consider, "giving weighted consideration to those factors which affect the safety of the child[,]" in determining whether to grant, or deny, a petition for proposed relocation. 23 Pa.C.S.A. § 5337(h). Those factors are as follows:

(1) The nature, quality, extent of involvement[,] and duration of the child's relationship with the party proposing to relocate and with the nonrelocating party, siblings[,] and other significant persons in the child's life.

(2) The age, developmental stage, needs of the child[,] and the likely impact the relocation will have on the child's physical, educational[,] and emotional development, taking into consideration any special needs of the child.

(3) The feasibility of preserving the relationship between the nonrelocating party and the child through suitable custody arrangements, considering the logistics and financial circumstances of the parties.

(4) The child's preference, taking into consideration the age and maturity of the child.

(5) Whether there is an established pattern of conduct of either party to promote or thwart the relationship of the child and the other party.

(6) Whether the relocation will enhance the general quality of life for the party seeking the relocation, including, but not limited to, financial or emotional benefit or educational opportunity.

(7) Whether the relocation will enhance the general quality of life for the child, including, but not limited to, financial or emotional benefit or educational opportunity.

(8) The reasons and motivation of each party for seeking or opposing the relocation.

(9) The present and past abuse committed by a party or member of the party's household and whether there is a continued risk of harm to the child or an abused party.

(10) Any other factor affecting the best interest of the child.

23 Pa.C.S.A. § 5337(h)(1-10). "The party proposing the relocation has the burden of establishing that the relocation will serve the best interest of the child as shown under the factors set forth in" Section 5337(h). 23 Pa.C.S.A. § 5337(i)(1). "Each party has the burden of establishing the integrity of that party's motives in either seeking the relocation or seeking to prevent the relocation." 23 Pa.C.S.A. § 5337(i)(2).

When the non-relocating party submits a counter-affidavit objecting to both relocation, as well as a related proposal for modification of custody, the trial court, in addition to considering the ten factors enumerated in Section 5337(h), must also consider the sixteen custody factors set forth in Section 5328(a) before granting relocation and modifying an existing custody order. ***A.M.S. v. M.R.C.***, 70 A.3d 830, 836 (Pa. Super. 2013). Those factors are as follows:

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party[,] and which party can better provide adequate physical safeguards and supervision of the child.

(2.1) The information set forth in [23 Pa.C.S.A. §] 5329.1(a) (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life[,] and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent[,] and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational[,] and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S.A. § 5328(a)(1-16).

In her first issue, Mother challenges the trial court's order denying relocation, averring that the trial court's "conclusions are not supported by competent evidence of record, and therefore do not support its denial of [her] request to relocate." Mother's Brief at 19. More specifically, Mother takes issue with the trial court's assessment of the following relocation factors: three, five, six and eight. We will address each of Mother's claims in turn.

Mother initially challenges the trial court's finding that the Child and Father could not "maintain and preserve" their relationship if relocation occurred. Mother's Brief at 24; *see also* 23 Pa.C.S.A. § 5337(h)(3). Per Mother, the trial court's finding is contrary to the evidence presented, namely, the fact that "the quantity of Father's custodial time would not significantly change" under Mother's proposed schedule and because Mother offered to cover "a higher percentage of [the] costs" of travel. Mother's Brief at 26-27.

In addressing this factor, the trial court stated:

Father has a strong emotional bond with [the Child] and devotes most of his non-working time to [her] needs, interests, and development. There is no substitute for a Father who is actively involved in his child's life. If Mother were to move to Wisconsin, [the Child] would not be able to see her Father weekly, or engage in the activities and trips that they enjoy together. The remote area of Wisconsin where Mother wishes to move is not easily accessible to larger cities, except Green Bay, which is [90] minutes away[.] The move to Wisconsin would undoubtedly change Father and [the Child's] relationship.

While Mother's proposal offers Father monthly custodial time with [the Child], she testified that the distance is approximately [15] to [16] hours by car. With no direct flights and the need to travel to airports, the testimony showed that the travel time by airplane would be a minimum of eight hours considering travel to and from the airports and the two-hour early arrival

requirement. Thus, to see [the Child] once a month, Father would miss about five or six days of work. If Father does not work, he does not make money, and it did not appear that Mother contemplated that significant financial impact.

Additionally, Father explained the economic impact that traveling would have on him. If he drove, he would obviously have a gas expense, and that would take significantly longer to travel. If he flew, he would have a greater expense, and would have car rental fees. In either scenario, Father would need to pay for a hotel during his trip. Although Mother offered to pay 60% of the travel expenses, this is a significant cost each month for both parties given their financial resources. Mother's increase in earnings would be diminished by the expense she would have to pay to assist Father in traveling each month, while Father would lose twice as much by incurring expenses and lost wages. This factor clearly does not favor relocation.

Trial Court Opinion, 4/22/24, at 5-6. Our review of the evidence presented confirms that trial court's factual findings are supported by the record. Hence, we do not discern an abuse of discretion on the part of the trial court in its determination that this factor did not favor relocation.

Next, Mother alleges that the trial court "relied heavily" on its belief that she "has not always encouraged or permitted additional time with Father," *i.e.*, that Mother demonstrated a pattern of failing to promote a relationship between the Child and Father. Mother's Brief at 28; *see also* 23 Pa.C.S.A. § 5337(h)(5).

In addressing this relocation factor, the trial court opined:

The testimony at trial revealed that Mother, as the primary custodian, does not encourage additional time with Father. When the parties needed to change the schedule for traveling, both accommodated the other's request, but while Mother testified that she gave Father more time, the evidence showed that it was equivalent time. Mother values her time with [the Child] as does Father. As such, significant time for each party

- 8 -

must be maintained, which would not occur if relocation were granted.

Trial Court Opinion, 4/22/24, at 7.

Our review of the record confirms the trial court's findings. In addition, we note that the testimony presented at trial demonstrated Mother's unwillingness to offer Father the opportunity to spend time with the Child, even while Mother is working. *See* N.T. Trial, 3/11/24, at 91-93. Instead, Mother opted to take the Child to a babysitter. *Id.* Moreover, Father testified that Mother did not allow Father to take the Child to Mexico, even though his family resides there and her parents reside there for at least part of the year. *See* N.T. Trial, 3/29/24, at 49-50. We therefore conclude that the trial court did not abuse its discretion in finding that this factor weighed against relocation.

In addition, Mother takes issue with the trial court's conclusion that "relocation to Wisconsin would not enhance the quality of [the Child] and Mother's lives." Mother's Brief at 19; *see also* 23 Pa.C.S.A. § 5337(h)(6). In Mother's view, the trial court erroneously discounted testimony indicating that relocation would enhance Mother's earning capacity, enable Mother and the Child to be surrounded by immediate and extended family members, and result in the Child attending a superior school district.

The trial court's assessment of this factor is as follows:

Both Mother and her significant other have family in Wisconsin. Mother seeks to relocate to Wisconsin to be closer to family, and the evidence presented was clear that moving to Wisconsin would likely allow her to spend more time with her family.

Mother's sister testified that the family gets together every weekend, including Mother's parents and siblings. However, there was also testimony that indicated that Mother's parents travel to Mexico for three to four months each year.

While being closer to family is an emotional benefit for Mother, Father raised concerns about Mother's relationship with her father. Father testified that Mother's family did not come to their wedding. He also recalled that Mother's relationship with her father was not good, and that Mother's parents frequently fought when he and Mother lived with them prior to moving to Harrisburg. As a result, the court questions whether this benefit is as great as Mother suggests. There is no doubt that Mother will continue frequent contact with her family if she remains in Central Pennsylvania. Mother likes to take extended trips in the summer to visit her family and she frequently calls them on the phone.

Mother also testified that[,] if she were granted []relocation[,] she [plans] to take over the family cleaning business. She believed that this employment opportunity would nearly double her income to approximately $70,000[.00] net annually. To support her claims, Mother presented prior year tax returns of the family business for 2020, 2021, and 2022. In 2021, the cleaning company reported net profit of $44,947[.00], and in 2022, the company reported a net profit of $63,788[.00]. However, the tax returns did not report the wages paid to their employees. Given the testimony of Mother's father, Miguel Orozco, [the c]ourt estimates that the employee wages would be at least $10,000[.00] annually. Thus, the net profit of the company would be less than $55,000[.00] annually. Mother further claims that if relocation were permitted, she will be residing in a home owned by her significant other's family and will only have to pay utilities.

While eliminating a housing expense can be financially beneficial, th[e c]ourt is not convinced that the economic benefit is as significant as Mother would believe. Relocating to Wisconsin may increase Mother's income by $17,000[.00] ($1,417[.00] each month); however, when considering the purported expense she would pay for Father's monthly visits, Mother's economic benefit is substantially less and may be *de minimis* considering the higher cost of living.

- 10 -

Trial Court Opinion, 4/22/24, at 7-9 (footnote omitted) (emphasis added).

Our review of the evidence presented confirms the trial court's findings, namely, that significant strife within Mother's family existed and that Mother's father's testimony regarding the profitability of the cleaning business was unclear, at best. We further note that Mother's living situation, while offering potential reductions in living expenses, was likely temporary. **See** N.T. Trial, 3/11/24, at 54-55 (Mother testifying that she planned to move to her significant other's grandmother's house, who lives primarily in Florida, but would eventually like to purchase a home in the area). Based upon the foregoing, we discern no abuse of discretion on the part of the trial court.

Finally, Mother asserts that the trial court failed to "address the integrity of the party's request and/or objection to relocation." Mother's Brief at 31; **see also** 23 Pa.C.S.A. § 5337(h)(8). More specifically, Mother claims that the trial court erroneously neglected to consider Father's motives for opposing relocation, including his alleged statement that he would not object to relocation if Mother ended her romantic relationship and Father's complete refusal to acknowledge the potential enhancements to Child's life presented by relocation. **See** Mother's Brief at 31-32.

In addressing this factor, the trial court opined:

> We find that both parties are earnest in their respective requests. Mother wishes to relocate to be closer to her family and take over her family business. Father opposes the relocation because it would substantially impair his enjoyment of regular and consistent custodial time with [the Child]. This factor neither weighs in favor of or against relocation.

Trial Court Opinion, 4/22/24, at 9. Again, the evidence confirms the trial court's findings. While it is true that the trial court did not specifically address Father's alleged statement regarding relocation, our review of the record demonstrates that the parties presented conflicting evidence on the subject. Hence, it is apparent that, in addressing this factor, the trial court focused on the testimony presented as a whole which, as admitted by Mother in her appellate brief, revealed "that Father objected to the relocation because it would impact his custodial time with [the Child]." Mother's Brief at 32. In light of our standard of review, we cannot say that, in so doing, the trial court committed an abuse of discretion. *See C.M.K. v. K.E.M.*, 45 A.3d at 421 (explaining that "this Court must defer to the trial [court that] presided over the proceedings and[,] thus[,] viewed the witnesses [firsthand]" when dealing with "issues of credibility and weight of the evidence").

Based upon all of the foregoing, we conclude that the trial court adequately addressed the relevant factors and that its findings are supported by the record. We therefore affirm the trial court's order denying relocation.

In her second issue, Mother contends that the trial court erred by requiring her to file a petition for modification, in conjunction with her petition for relocation, in order to schedule a hearing on the matter. In this same vein, Mother argues that the trial court erred in modifying the parties' custody arrangement after denying her relocation request. Per Mother, the trial court could only modify the parties' custody arrangement if Father filed a petition for modification. Because Father failed to file a petition, Mother claims that

the trial court "acted *sua sponte*," thereby denying Mother "proper due process to meet the burden of showing that the modification to the existing custody schedule was not in [the Child's] best interest." Mother's Brief at 38.

Mother's claim fails – and does so for two reasons. First, the trial court did not err in requiring Mother to file a petition for modification in conjunction with her request for relocation. Rule 1915.17 of the Pennsylvania Rules of Civil Procedure states, in relevant part, as follows:

> (a) A party proposing to change the residence of a child which significantly impairs the ability of a non-relocating party to exercise custodial rights must notify every other person who has custodial rights to the child and provide a counter-affidavit by which a person may agree or object. The form of the notice and counter-affidavit are set forth in subdivisions (i) and (j) below. The notice shall be sent by certified mail, return receipt requested, addressee only or pursuant to Pa.R.C.P No. 1930.4, no later than the sixtieth day before the date of the proposed change of residence or other time frame set forth in 23 Pa.C.S. § 5337(c)(2).
>
> (b) If the other party objects to the proposed change in the child's residence, that party must serve the counter-affidavit on the party proposing the change by certified mail, return receipt requested, addressee only, or pursuant to Pa.R.C.P. No. 1930.4 within 30 days of receipt of the notice required in subdivision (a) above. If there is an existing child custody case, the objecting party also shall file the counter-affidavit with the court.
>
> ***
>
> (f) If the party proposing the relocation has received notice of objection to the proposed move after serving a notice of proposed relocation as required by 23 Pa.C.S. § 5337 *et seq.*, the party proposing relocation shall file:
>
> > (1) **a complaint for custody or petition for modification, as applicable**;

- 13 -

> (2) a copy of the notice of proposed relocation served on the non-relocating party;
>
> (3) a copy of the counter-affidavit indicating objection to relocation; and
>
> (4) a request for a hearing.

Pa.R.C.P. 1915.17(a)-(b), (f) (emphasis added).

In this instance, Mother filed a notice of proposed relocation on December 5, 2023, to which Father filed his objection on December 14, 2023. Thus, pursuant to Rule 1915(f), Mother, as the party proposing relocation, was required to file, *inter alia*, a petition for custody modification. Pa.R.C.P. 1915.17(f). Because the trial court followed the provisions of Rule 1915(f), Mother's claim of error fails.

Second, Mother's contention that the trial court acted *sua sponte*, thereby depriving her of her due process rights, is meritless and belied by the record. In response to Mother's allegation, the trial court opined:

> Modifying custody to provide a party with additional time is within [the trial c]ourt's discretion if it is in the child's best interest. Mother filed the modification petition, and both parties were aware of the request to change custody. Mother was aware of Father's request for increased custodial time, as he articulated that in his pre-trial statement. Therefore, there was no due process violation. Father testified that he would like more custodial time [during the trial], and increasing one party's custodial time is one of the many options courts have at their discretion when [reviewing] a petition to modify custody.

Trial Court Opinion, 6/20/24, at 12, n.4. Our review confirms that Mother and Father were on notice that the issue of custody would be presented during the trial. Hence, no trial court error or deprivation of due process occurred. ***See***

***C.A.J. v. D.S.M.***, 136 A.3d 504, 509 (Pa. Super. 2016) ("Based on our review of relevant case law, we conclude that if the parties had notice that custody would be at issue, the court is permitted to modify custody without. . . [filing] a [] petition for modification."); ***see also S.W.D. v. S.A.R.***, 96 A.3d 396, 406-407 (Pa. Super. 2014); ***Guadagnino v. Montie***, 646 A.2d 1257, 1262 (Pa. Super. 1994) (accord).  For this additional reason, Mother's claim fails.

Order affirmed.

Judge Kunselman joins.

Judge Nichols concurs in the result.

Judgment Entered.

_____

Benjamin D. Kohler, Esq.
Prothonotary

Date: <u>12/3/2024</u>