J-A18014-20

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

A.M.P.                                              :        IN THE SUPERIOR COURT OF
                                                   :               PENNSYLVANIA
                Appellant                          :
                                                   :
                                                   :
        v.                                         :
                                                   :
                                                   :
D.M.P.                                             :        No. 182 WDA 2020

Appeal from the Order Dated January 6, 2020
In the Court of Common Pleas of Armstrong County Civil Division at
No(s):  No. 2014-1232-Civil

BEFORE:  BENDER, P.J.E., DUBOW, J., and NICHOLS, J.

MEMORANDUM BY BENDER, P.J.E.:                          FILED AUGUST 27, 2020

A.M.P. ("Mother") appeals from the January 6, 2020 order, which denied her request to relocate with the parties' minor child, E.B.P. ("Child"), born in January of 2010, from Armstrong County, Pennsylvania to Tallmadge, Ohio, and awarded D.M.P. ("Father") primary physical custody of Child subject to Mother's partial physical custody, in accordance with a schedule delineated in the order.  After careful review, we affirm.

The trial court provided the following factual and procedural history in its memorandum ("TCM"), which it issued in conjunction with its January 6, 2020 order ("Custody Order"):

> The parties were married in March [of] 2008[,] and … Child was born in January [of] 2010.  After the parties separated, Mother filed a Complaint for Custody in September [of] 2014.  The parties entered into a Consent Order on November 5, 2014.  The parties were later divorced in December [of] 2014.  The parties again entered into a Custody Consent Order on July 1, 2015. Pursuant to the July 2015 Consent Order, the parties shared legal

custody of … Child[,] and Mother was granted primary physical custody subject to Father's periods of physical custody.    In relevant part, Father had custody of … Child every other weekend, Mondays overnight, Wednesday evenings, and every other Thursday evening … during Mother's custodial week.  This custody arrangement was in place for several years, prior to the instant petitions filed by Mother.

Mother provided Father with a Notice of Proposed Relocation on May 14, 2019.  The notice stated, "The reason[] for relocation is … that Mother's fiancé[, S.F.,] … resides in Ohio and they plan to marry upon her relocation."  Mother's proposed date of relocation was July 1, 2019.  Father filed a timely Counter-Affidavit objecting to the proposed relocation on June 11, 2019.  [A h]earing on this matter was not scheduled until October 17, 2019.  Despite one day being allotted for the hearing, the [c]ourt took significant testimony and adjourned until December 17, 2019[,] at which time the hearing concluded.

Mother testified that she currently resides in Tallmadge, Ohio.  She resides with [S.F.], his minor child, N.F., and … Child.  Mother and [S.F.] are engaged to be married.  The two met in Pittsburgh, however[,] [S.F.] accepted a position in Ohio.  Mother is seeking relocation in order to begin her life with [S.F.,] who currently resides in Ohio.  Specifically, Mother testified that her current employer offers an increased salary, which Mother could use to … Child's benefit, and that there are increased opportunities for advancement and promotion.  Mother also sees the Ohio school as a benefit to … Child.  Mother testified that … Child and N.F. are close and that she would grow up with a sibling[,] which would be to her benefit.  The children would attend school together and be in the same grade.  While highlighting the benefits of a relocation, Mother also noted the potential difficulties.  Yet, she believes that … Child would overcome any obstacles and thrive in Tallmadge.  Mother is seeking to relocate … Child to Tallmadge, Ohio and[,] consequently[,] a modified custody schedule.    Mother also testified that she will remain in Ohio even if the [c]ourt denies her request to relocate … Child.

Father resides in Apollo, Pennsylvania[,] with his wife[, E.P.,] with whom … Child has an excellent relationship….  Child also spends time with paternal grandmother.  [E.P.'s] parents are also present in … Child's life, as Father and [E.P.] share a duplex with her parents.  Father testified that … Child is a sweet, loving, family-oriented girl and that a relocation would hinder her

development. Father has enrolled ... [C]hild in counseling.... Child also has an IEP for issues with math and reading. Father opposes the relocation on the basis that his already limited time with ... Child would be further limited due [to] the distance the parties would live apart. Father is also concerned about the amount of time it would take him to get to ... Child in an emergency situation. Father noted that the distance would be impractical for weeknight visits with ... Child. Father further notes ... Child's entire life is in Armstrong County, including her counselor and extended family, to include Mother's as well. Father is seeking primary physical custody of ... Child.[1]

TCM, 1/6/20, at 1-3 (footnote omitted).

On January 6, 2020, the court entered an order, which denied Mother's petition for relocation and awarded Father primary physical custody of Child, subject to Mother's periods of partial custody. See Custody Order at 1-4. Mother and Father maintain shared legal custody of Child. Id. at 1. Mother filed an Emergency Motion for Reconsideration, along with an Emergency Motion to Stay Custody Order Pending Reconsideration. The trial court denied reconsideration on January 28, 2020.

On February 4, 2020, Mother filed a timely notice of appeal, along with a timely concise statement of errors complained of on appeal, pursuant to Pa.R.A.P. 1925(a)(2). Herein, Mother presents the following issues for our review:

I. Did the trial court abuse its discretion and commit an error of law when its consideration of the relocation factors and

_____

[1] We clarify that Father did not file a separate petition seeking primary physical custody. He did, however, file a counter-affidavit objecting to Mother's notice of relocation and request for custody modification. Moreover, Father indicated during the trial that he is willing and able to care for Child full-time. See N.T. Trial, 12/17/19, at 64.

custody factors was based on factual findings and inferences that were either not supported by or contradicted by the evidence in the record[?]

II.    Did the trial court abuse its discretion and commit an error of law by not giving full consideration to the best interests of the child (including but not limited to the impact on the relationship with both parents and the impact of changing schools if custody was granted to Father) when denying the relocation and switching the primary physical custodian to Father even though neither party was requesting a change in the custody order if the relocation was denied and making the change based on factual findings and inferences that were either not supported by or contradicted by the evidence in the record[?]

Mother's Brief at 9.

Both claims advanced in Mother's appeal challenge the trial court's custody order denying her petition for relocation and modifying the parties' custody agreement. We review such custody determinations under the following scope and standard of review:

> [O]ur scope is of the broadest type and our standard is abuse of discretion. This Court must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, this Court must defer to the trial judge who presided over the proceedings and thus viewed the witnesses first hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.
>
> E.D. v. M.P., 33 A.3d 73, 76 (Pa. Super. 2011) (citation omitted). With any child custody case, this Court has long stated that the paramount concern is the best interests of the child. Landis v.

Landis, 869 A.2d 1003, 1011 (Pa. Super. 2005). This standard requires a case-by-case assessment of all of the factors that may legitimately affect the "physical, intellectual, moral and spiritual well-being" of the child. Id. When a custody dispute involves a request by a party to relocate, we have explained, "there is no black letter formula that easily resolves relocation disputes; rather, custody disputes are delicate issues that must be handled on a case-by-case basis." Baldwin v. Baldwin, 710 A.2d 610, 614 (Pa. Super. 1998).

C.M.K. v. K.E.M., 45 A.3d 417, 421 (Pa. Super. 2012).

Section 5337(h) of the Child Custody Act (23 Pa.C.S. §§ 5321-5340) prescribes the factors which a court must consider when determining whether to grant a proposed relocation:

(h) Relocation factors.—In determining whether to grant a proposed relocation, the court shall consider the following factors, giving weighted consideration to those factors which affect the safety of the child:

(1) The nature, quality, extent of involvement and duration of the child's relationship with the party proposing to relocate and with the nonrelocating party, siblings and other significant persons in the child's life.

(2) The age, developmental stage, needs of the child and the likely impact the relocation will have on the child's physical, educational and emotional development, taking into consideration any special needs of the child.

(3) The feasibility of preserving the relationship between the nonrelocating party and the child through suitable custody arrangements, considering the logistics and financial circumstances of the parties.

(4) The child's preference, taking into consideration the age and maturity of the child.

(5) Whether there is an established pattern of conduct of either party to promote or thwart the relationship of the child and the other party.

(6) Whether the relocation will enhance the general quality of life for the party seeking the relocation, including, but not limited to, financial or emotional benefit or educational opportunity.

(7) Whether the relocation will enhance the general quality of life for the child, including, but not limited to, financial or emotional benefit or educational opportunity.

(8) The reasons and motivation of each party for seeking or opposing the relocation.

(9) The present and past abuse committed by a party or member of the party's household and whether there is a continued risk of harm to the child or an abused party.

(10) Any other factor affecting the best interest of the child.

23 Pa.C.S. § 5337(h). It is the burden of the party proposing the relocation to establish that the relocation will serve the best interest of the child in accordance with the factors set forth in subsection (h). 23 Pa.C.S. § 5337(i). See also S.J.S. v. M.J.S., 76 A.3d 541, 551 (Pa. Super. 2013).

In addition to the foregoing relocation factors, the trial court must also consider the sixteen custody factors set forth in Section 5328 of the Child Custody Act,[2] when making a decision on relocation that also involves a

---

[2] Section 5328 of the Child Custody Act sets forth the following factors to consider when awarding custody:

(a) Factors.—In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

_____

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(2.1) The information set forth in section 5329.1(a) (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by

custody decision. See A.M.S. v. M.R.C., 70 A.3d 830, 836 (Pa .Super. 2013). The trial court "shall delineate the reasons for its decision on the record in open court or in a written opinion or order." 23 Pa.C.S. § 5323(d). See also A.V. v. S.T., 87 A.3d 818, 823 (Pa. Super. 2014) (noting that Section 5323(d) applies to cases involving custody and relocation). "In expressing the reasons for its decision, there is no required amount of detail for the trial court's explanation; all that is required is that the enumerated factors are considered and that the custody decision is based on those considerations." Id. (internal citation omitted). "A court's explanation of reasons for its decision, which adequately addresses the relevant factors, complies with Section 5323(d)." Id.

Instantly, the trial court issued a memorandum, in conjunction with its Custody Order, which contains a detailed analysis of each of the statutorily mandated relocation and custody factors. See TCM at 4-13. In its relocation analysis, the trial court found factors 1, 4, 5, 8, and 9, to be neutral. Id. at 5-8. The court further found factors 2, 3, and 7, to favor Father and, although

---

another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S. § 5328(a).

- 8 -

it did not expressly state as much, the court's analysis of factor 6 appears to favor Mother. Id.

Mother claims that the trial court's findings in favor of Father are based on factual findings and inferences that are not supported by the record. Mother's Brief at 14. She specifically takes issue with the trial court's conclusion regarding factor 2 that Mother will not continue Child's therapy if relocation is granted. Id. at 15-16. The trial court opined, in relevant part:

> (2) <u>The age, developmental stage, needs of the child and the likely impact the relocation will have on the child's physical, educational and emotional development, taking into consideration any special needs of the child</u>.
>
> The parties gave differing testimony regarding ... Child's ability to adjust to a proposed relocation. Mother believes that ... Child will not only adjust well, but would thrive in the Tallmadge area. Father believes ... Child is in the best environment given that she is already enrolled in an IEP at her current school and [is] currently seeing a therapist. Since beginning therapy, ... Child was diagnosed with adjustment disorder with anxiety. While ... Child is likely to receive an IEP in her new school, Mother testified that she does not plan to continue the therapy if ... Child relocates to Ohio. This factor favors Father, and [weighs] against a relocation.

TCM at 5-6.

Mother avers that her testimony merely indicated that she had not yet located a therapist in Ohio and had not discussed continued therapy with Child's current therapist. Mother's Brief at 16. The record reveals, however, that it was Father, not Mother, who enrolled Child in therapy. N.T. Trial, 10/17/19, at 33-34. Mother testified that she did not see any issues with Child, that she had not experienced the same issues with Child as Father had, and that Child was in counseling because Father said she needed to be. Id.

at 33-35. Mother also indicated that she did not think Child was benefitting from therapy and admitted that she has not sought out additional counseling in Ohio. Id. at 88. Thus, although our review of the transcript did not reveal any express testimony by Mother that she planned to discontinue Child's therapy if Child relocates to Ohio, we conclude that such inference made by the trial court is reasonable in light of the evidence presented at trial. See E.D., 33 A.3d at 76.

To the extent that Mother questions the weight given to this factor by the trial court, it is well-settled that,

> [t]he parties cannot dictate the amount of weight the trial court places on evidence. Rather, the paramount concern of the trial court is the best interest of the child. Appellate interference is unwarranted if the trial court's consideration of the best interest of the child was careful and thorough, and we are unable to find any abuse of discretion.

S.M. v. J.M., 811 A.2d 621, 623 (Pa. Super. 2002) (citing Robinson v. Robinson, 645 A.2d 836, 838 (Pa. 1994)). Based on our review, it is evident that the court conducted its analysis with careful consideration given to Child's best interest, and we discern no abuse of discretion. Thus, Mother is not entitled to any relief on this claim.

Mother further avers that the trial court failed to "truly consider" the feasibility of preserving the relationship between Father and Child in its analysis of factor 3. Mother's Brief at 18. We deem this claim to be meritless. While it agreed "the parties would do their best to maintain their relationship with ... Child, and [to] assist one another in doing so," the trial court found

that "Father's relationship would be unduly strained." TCM at 6. In support of its determination, the trial court noted that Father believed FaceTime and telephone calls to be no substitute for the close contact he currently has with Child, as well as Father's fear that his relationship with Child would deteriorate as a result of the proposed relocation. Id. The trial court further noted that if relocation were granted, Child would be spending several hours per week in the car travelling between Tallmadge, Ohio, and Apollo, Pennsylvania. Id. We deem the trial court's findings to be supported by competent evidence in the record. Moreover, we defer issues of credibility and weight of the evidence to the trial judge. See E.D., 33 A.3d at 76.

Regarding factor 7, the trial court stated:

(7) <u>Whether the relocation will enhance the general quality of life for the child, including, but not limited to, financial or emotional benefit or educational opportunity</u>.

There was significant testimony about the opportunities in the Tallmadge area, with respect to the community and the schools. However, as noted by Father, everything available there is available to … Child in Apollo. There was also testimony about the schools that Child would attend, and that she would be in the same grade as N.F. Yet, there was no competent testimony regarding the nature and quality of the schools by which the [c]ourt could make a determination that there are enhanced educational opportunities for … Child weighing in favor of a relocation.

TCM at 7-8. Mother avers that the trial court failed to fully develop its analysis, and that the trial court erred in finding "everything available in Tallmadge was available in Apollo[.]" Mother's Brief at 19. To the contrary, we determine that the trial court's analysis adequately addresses the relevant factors and that the trial court's findings are supported by the record. See A.V., 87 A.3d

at 823. Mother has failed to meet her burden of proving that the relocation of Child is in Child's best interest.

We turn next to the trial court's analysis of the custody factors enumerated under Section 5328(a). See TCM at 10-13. Based on the evidence presented at trial, the trial court found factors 1, 2, 2.1, 3, 5, 7, 8, 9, 10, 12, 13, 14, 15, and 16, to be neutral. Id.[3] Factor 6, which pertains to sibling relationships, appears to favor Mother, as the trial court acknowledged that Child has "a loving, natural relationship" with Mother's 17 year old daughter, M.P., and that Child also has "a loving sibling relationship" with S.F.'s minor son, N.F., who would become Child's step-brother if Mother and S.F. marry. Id. at 11-12. Factors 4 and 11 favor Father. Id. at 11-13.

Factor 4 considers Child's need for stability and continuity in her education, family life, and community life. The trial court observed:

> Child's need for stability and continuity in education, family, and community life are highlighted by her counselor diagnosing her with adjustment disorder and anxiety issues. [] Child also participates in an IEP at school, in which both parents are active participants. Both parties' extended families also live in the Armstrong County area. Given ... Child's temperament and

_____

[3] Mother suggests that factor 12, regarding the parties' availability to care for Child or the ability to make appropriate childcare arrangements, favors her. Mother's Brief at 24. We disagree. The trial court noted that Father resides in the same house as his wife's parents, who help provide childcare as needed, while Mother testified that her flexible work schedule allows her to provide childcare as needed. TCM at 13. It appears that both parties are capable of providing appropriate care for Child and, thus, the trial court does not favor one party over the other regarding this factor.

diagnosis, this factor favors Father, as the nonrelocating party in this case.

Id. at 11.

Mother argues that the trial court has improperly based its analysis of factor 4 on factual findings and inferences that are not supported by the record. Mother's Brief at 25. More specifically, she asserts that Child has not maintained continuity in her education, because after Father was awarded primary custody, Child was moved to a different school district. Id. Additionally, Mother states that by granting Father primary custody, it effectively terminated Child's continuity of time with Mother. Id. The trial court found Mother's arguments to be "disingenuous,"

> as Mother's proposal was that ... Child [would] begin attending school in Ohio immediately following the winter holiday break.... [E]ither ... Child was going to be enrolled in Ohio, or enrolled in Father's local school district. In neither case would ... Child remain in her current district, where maternal grandparents reside. When asked about the relocation petition being denied, Mother stated that she "would still look for something in Pennsylvania, but maybe a little closer to the Butler/Grove City area...." Therefore, the issue of lack of continuity of schooling was necessarily implicated in any option before the court.

TCO at 4-5.[4] We deem the trial court's findings to be supported by the record, and we discern no error of law or abuse of discretion.

As to custody factor 11, regarding the proximity of the parties' residences, the trial court found: "Mother resides in Tallmadge, Ohio[,] and Father resides in Apollo, Pennsylvania. The parties stipulated to the distance

_____

[4] We note that Child also experienced a change in elementary schools as a result of Mother's change in residence during the summer of 2019. See N.T. Trial at 11.

and travel time between the parties' residences and proposed custody pick-up an[d] drop off locations. The parties reside approximately 2½ hours apart." TCM at 12. Mother disputes the trial court's finding that she resides in Tallmadge. Mother's Brief at 25-26. She contends that her residence is in Worthington, Armstrong County, and that the parties' residences would only be 2½ hours apart if her relocation petition was granted. In the event that relocation is denied, Mother asserts that she would continue to reside only 30 minutes from Father. Id. The record belies Mother's claims.

In support of its finding that Mother resides in Tallmadge, the trial court opined:

> The [c]ourt was under no misapprehension of Mother's situation: she had a home and a job in Ohio, and she spent nights at her parents' home in Pennsylvania, as needed, to maintain the current custody schedule. Indeed, she testified that she divided her time between the two residences:
>
>> Q. Do you consider yourself to have two residences currently?
>>
>> A. Yes.
>
> Mother went [on] to say that her residence in Pennsylvania is not a permanent one. Furthermore, Mother went on to reiterate her statement of having two residences on cross-examination.
>
>> Q. You did say that you consider the Ohio home to be your residence?
>>
>> A. Yeah. I have two residences. I live back and forth between both.

TCO at 4 (footnotes omitted). We further note that Mother testified that she purchased a home in Tallmadge with her fiancé in September of 2018, and that she has traveled with Child to her Ohio home almost every weekend since.

- 14 -

N.T. Trial at 21, 23. When asked about her plans in the event that her relocation petition is denied, Mother insisted that she and S.F. would still get married, and explained that she would have to move. "I can't stay at my parents' house. That is temporary. I will look for another house." Id. at 90-91. Mother provided no concrete plan, however, at the time of trial, in the event that relocation was denied.

> [O]nly after the January 6th [Custody] Order did Mother state that she was "seeking local employment as commuting is not sustainable on a long term basis," and that "Mother's fiancé is intending to relocate back to Pennsylvania where he and Mother will locate more permanent housing." Both of those arguments are belied by the record—Mother's fiancé has his own custody situation in Ohio[,] and there was never any testimony that Mother and her fiancé might abandon the Tallmadge, Ohio[,] plan for some other course of action.[5]

TCO at 5. Based on the foregoing, we discern no error or abuse of discretion in the trial court's finding that Mother resides in Tallmadge, Ohio. Mother is not entitled to relief on this claim.

We now address Mother's allegation that the trial court failed to give "full consideration" to Child's best interests in making its custody determination. Mother's Brief at 19. Contrary to Mother's claim, we discern

---

[5] When asked why her fiancé does not move back to Pennsylvania, Mother testified: "With his job and his son, he can't. He would be in a relocation battle as well." N.T. Trial at 83. Mother explained that S.F. was awarded primary physical custody of N.F., beginning in January of 2019, and that S.F. already had one relocation with his job, and that his employer would not relocate him again. Id. at 76. Mother's testimony was corroborated by S.F.'s statement that he has an agreement with his employer that he will not be relocated again and that this arrangement is important to him because it provides "stability for [his] son." Id. at 105.

that the trial court's paramount concern was, in deed, the best interest of Child, as evidenced by the following:

> Mother is the relocating party[] and provided the [c]ourt with clear reasons for her desire to relocate. While the relocation may be in her best interest, personally and financially, the same is not true for ... Child. While Tallmadge, Ohio appears to be a fine community,... Child has extensive family and social connections here [in] Armstrong County[,] which would be significantly hampered or even ended by the proposed relocation. The family connections in Armstrong County include both parents' families.... Child has an IEP in her current school and is showing improvement. Certainly[,]... Child would have an IEP at any school she attends, however[,] Father's ability to participate in meetings and [his] ability to be hands[-]on would be greatly diminished in the event of a relocation.

> Since the [c]ourt will deny the relocation of ... Child to Ohio, the [c]ourt will enter a new custody order that will grant primary physical custody to Father, and Mother's partial custody rights will in many ways mirror the partial custody rights that Mother proposed for Father.

TCM at 14. The record reflects that the trial court carefully considered all of the statutorily mandated factors, while taking into account Child's best interest, in arriving at its custody determination. See 23 Pa.C.S. § 5323(a). We conclude that the court's findings are supported by the record, and that it adequately explained the basis for its decision. See 23 Pa.C.S. § 5323(d); A.V., 87 A.3d at 823. Thus, we discern no error of law or abuse of discretion.

Finally, Mother argues that the trial court erred and abused its discretion by changing the primary custodian from Mother to Father, as neither party was requesting a modification of the custody order in the event that her relocation petition was denied. Mother's Brief at 19-24. She contends that

both parties agreed that if the relocation request was not granted, then it was in Child's best interest for the custody schedule to remain the same. Id. at 24. Mother is not entitled to any relief on this claim.

In response to Mother's contention, the trial court noted:

Mother filed a Custody Modification contemporaneously with her Notice of Relocation. Mother does not put forward any alternative should the relocation petition be denied.[6] In fact, Mother states the current order is no longer in … Child's best interest[,] due to Mother's desire to move to Ohio. Furthermore, Father stated initially that for "nothing to change would be the easiest transition for her." However, Father later testified that he was willing and able to take primary custody of … Child. While Father did not file his own separate modification petition, Mother put custody at issue by filing her modification petition. The [c]ourt was not foreclosed from considering a change in primary physical custody based on the record before the [c]ourt.

TCO at 3 (footnotes omitted).

_____

[6] The trial court added:

Mother has framed the issues raised on appeal as though there were a "Plan B," when, in fact, Plan B was never developed on the record at trial. The [c]ourt only heard about "Plan A," which was presented as Mother's sole proposal. Prior to trial, Mother had already laid the groundwork for her relocation petition to be granted, as though a successful relocation petition were almost a foregone conclusion. Before coming to [c]ourt, Mother and her fiancé purchased a home in Tallmadge, Ohio; Mother got a new job in Ohio; and although Mother was dividing her time between Pennsylvania and Ohio pending a new custody order, Mother had taken significant steps toward completing her own move to Ohio. Now that the [c]ourt has denied … [C]hild's relocation, Mother's argument on appeal is that the [c]ourt should have simply kept the status quo. But the status quo was never offered by Mother as a viable option.

TCO at 2.

Moreover, we determine that the trial court did not abuse its discretion in modifying the custody award, as Mother and Father were clearly on notice that custody would be at issue during the relocation/custody trial. See C.A.J. v. D.S.M., 136 A.3d 504, 509 (Pa. Super. 2016) (concluding that if the parties had notice that custody would be at issue, the court is permitted to modify custody without a pending petition for modification); S.W.D. v. S.A.R., 96 A.3d 396, 405-06 (Pa. Super. 2014) (indicating that if notice of a proceeding adequately advises a party that custody will be at issue, a court may entertain the request to permanently modify a custody order after hearing in that proceeding); Guadagnino v. Montie, 646 A.2d 1257, 1262 (Pa. Super. 1994) (stating that a party's failure to file a petition for modification of a custody order does not prevent the trial court, under appropriate circumstances, from altering a custody order when it is in the best interest of the child to do so).

Accordingly, we affirm the trial court's January 6, 2020 order denying Mother's request for relocation and awarding Father primary physical custody.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/27/2020

- 18 -