J-S13001-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| LYNN METZINGER, N/K/A LYNN KITCHNEFSKY | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| | : | No. 31 MDA 2025 |
| CHRISTOPHER LORSON | : | |

Appeal from the Order Entered December 6, 2024
In the Court of Common Pleas of Columbia County
Civil Division at No(s):  2013-CV-0001720-CU

BEFORE:  PANELLA, P.J.E., KUNSELMAN, J., and NICHOLS, J.

MEMORANDUM BY PANELLA, P.J.E.:                    **FILED: JULY 8, 2025**

Lynn Metzinger, n/k/a Lynn Kitchnefsky ("Mother"), appeals from the December 6, 2024 custody order that awarded Christopher Lorson ("Father") partial physical custody of the parties' biological daughters, I.L., born in March 2011, and S.L., born in June 2013 ("the Children"), and provided instructions for Father to make up missed custodial time due to his ongoing military service in the United States ("U.S.") Army Reserves.  Upon careful review, we affirm.

We gather the relevant factual and procedural history of this matter from the certified record.  The parties never married but resided together until shortly after the birth of S.L. in June 2013.  *See* N.T., 8/30/24, at 6.

On December 30, 2013, Mother initiated the underlying custody action wherein she requested physical custody of the Children.  On March 21, 2014, Father filed an answer and counterclaim seeking shared physical custody of

the Children. Following a custody conference, by order dated July 10, 2014, the court awarded the parties shared legal custody, Mother primary physical custody, and Father partial physical custody three weekends each month from Thursday evening to Sunday evening. *See* Custody Order, 7/10/14.

By way of background, Father has served in the U.S. Army Reserves for more than twenty years. *See* N.T., 8/30/24, at 15-18. As a reservist, Father is required to participate in one "training" each month for a duration of two to four days, during which time Father is not permitted to return home. *See id.* at 16. These trainings typically occur on the weekend. *See id.* Father also must attend one annual training, which generally occurs during the summer months and is two to four weeks in duration. *See id.* Father's mandated trainings sometimes occur during his allotted custodial time. As such, Father's duties as a reservist became consequential to his custodial award and resulted in protracted custody litigation, as discussed further *infra*.

The parties utilized the July 10, 2014 custody order until August 2018, when the court modified the order, following a custody conference. By interim order dated August 23, 2018, the court awarded Father alternating weekends from Thursday evening until Sunday evening, and alternating Thursdays from 5:00 p.m. until the Children go to school Friday morning. On September 10, 2018, Father filed exceptions to the interim order asserting, *inter alia*, that the order did not include agreed-upon provisions regarding Father's "drill

weekends." Father's Exceptions, 9/10/18, at Exhibit B. Specifically, Father

alleged that the parties agreed to the following:

> d) The parties agreed to specific provisions about how custody would switch to accommodate Father's drill weekends:
>
> > i. If Father's drill weekend falls on Father's regularly scheduled weekend, Father shall have Mother's weekend immediately preceding the drill weekend. [] It is an even exchange of only the times during his regular period of custody Father will actually be gone.
> >
> > . . .
> >
> > iii. Father has 2-3 weeks of annual training for the military each summer. Mother shall have custody during those 2-3 weeks of annual training each summer, but Father shall have custody the week immediately before the annual training period begins and the week immediately after he gets home from the annual training period. If the annual training period lasts three weeks, Father shall have a make-up week for the third week within thirty (30) days of returning from drill.

*Id.*

On October 1, 2018, the trial court entered a revised interim order that

provided Father "make[-]up for days or weeks lost by his drill schedule." Later

that same month, Father filed a petition for contempt alleging that Mother

failed to provide him with adequate notice of a meeting regarding the Children

at their school and for signing the Children up for activities without his

consent. *See* Petition for Contempt, 10/10/18.

On November 25, 2019, the court entered a final agreed-upon custody order ("existing custody order") that disposed of Father's pending contempt petition and previously filed exceptions. The court awarded Father partial physical custody of the Children, then ages eight and six, respectively, every Wednesday at 5:00 p.m. to Friday at 3:00 p.m., and on alternating weekends from Friday at 3:00 p.m. to Sunday at 5:00 p.m. Further, the existing custody order awarded the parties equally shared physical custody during the summer on a week on/week off basis. The existing custody order also set forth a procedure for the parties to follow providing Father with make-up time when his reservist duties occurred during his custodial time. *See* Custody Order, 11/25/19, at 4-6 (unpaginated).

During the next few years, in response to petitions filed by Mother, the court made minor modifications to the existing custody order. Relevant to this disposition is Father's petition for modification filed on September 19, 2023, wherein he sought "clarification of the vacation schedule." Petition for Modification, 9/19/23, at ¶ 7. Father alleged that Mother was misusing her vacation weeks to "take time away" from him.[1] *Id.* at ¶ 4.

---

[1] Concomitantly, Father filed a petition for contempt. Mother filed a counter-contempt petition on November 21, 2023. In its opinion following the subject August 30, 2024 hearing, the trial court stated that, "[b]y agreement of [the parties'] legal counsel, the [c]ontempt [p]etitions were deferred to a later date . . . . The disposition shall be left suspended unless either [p]arty file a [p]raecipe for a [h]earing within the next 60 days; otherwise, the [petitions] will be dismissed." Order, 12/6/24, at 5-6.

Following a custody conference, by interim order, the court modified the existing custody order by implementing, *inter alia*, a new vacation schedule. However, on December 27, 2023, Mother filed exceptions to the interim order. The trial court scheduled a custody hearing for August 30, 2024. Prior to the hearing, on July 23, 2024, Mother filed a counter-petition for modification of the existing custody order, wherein she sought, *inter alia*, primary physical custody. Mother asserted that equally shared physical custody during the summer was no longer in the best interests of the Children because they would prefer to be with her when Father is working during the week. ***See*** Counter-Petition for Modification, 7/23/24, at ¶ 14. Therefore, Mother requested that the court provide a single custody schedule for the entire year. ***Id.*** Further, Mother requested that the court eliminate Father's make-up time that the court had awarded him as a result of his duties in the U.S. Army Reserves. ***Id.*** at ¶ 16.

On August 30, 2024, the trial court conducted a hearing on the parties' competing petitions for modification. Father testified and presented the testimony of his wife, J.L. ("Stepmother"). Mother testified on her own behalf and also adduced the testimony of her husband, C.K. ("Stepfather"), and her adult daughter from a former paramour, C.M. The court also interviewed the Children together *in camera*, who were then thirteen and eleven years old, respectively, in the presence of the parties' counsel.

At the outset of the hearing, Father requested equally shared physical custody of the Children.[2] **See** N.T., 8/30/24, at 8, 33. Mother maintained her request for year-round primary physical custody and the elimination of the provisions providing Father with make-up time in consideration of his duties. **See id.** at 109-111.

Father testified that he resides in Millville, Pennsylvania, with Stepmother, to whom he has been married for approximately five-and-one-half years, and their biological daughter, who was two years old at the time of the custody trial. **See id.** at 6, 9, 72. Father and Stepmother are employed by the Federal Bureau of Prisons at Allenwood Prison. **See id.** at 11-12. Father works Monday through Thursday from 6:00 a.m. to 4:00 p.m., and Stepmother typically works from 11:00 p.m. or 12:00 a.m. to 7:00 a.m. or 8:00 a.m. **See id.**

Mother testified that she resides in Stillwater, Pennsylvania, with Stepfather, whom she married in August 2018. C.M. also resides on the property in "an apartment behind the garage."[3] **Id.** at 80. Mother is a pediatric nurse. **See id.** at 81. Her work consists of taking "a school-aged child to school," which she does Monday and Wednesday, solely during the

---

[2] As related *supra*, Father's September 2023 petition for modification merely sought clarification of the vacation schedule.

[3] Mother also has two adult sons from the same former paramour who do not reside with her.

school year. *Id.* Mother is also a part-time student, and her classes, of which the area of study was not disclosed, occur online. *See id.* Stepfather is an electrician. *See id.* at 121. He works Monday through Friday from 6:00 a.m., to 3:30 p.m. *See id.*

The parties testified that Father's training schedule as a reservist has caused various problems. Father testified that he receives his training schedule for the upcoming year a couple months before it begins, and he always provides it to Mother. *See id.* at 16-17. While Father testified that the schedule is subject to change, he explained that he is provided at least one month's notice of such change, which he also shares with Mother in a timely fashion. *See id.* at 17. Father stated that he had approximately three years left on his reservist contract at the time of these proceedings, which he signed to ensure that the "educational benefits" transfer to all three children.[4] *Id.* at 18.

With respect to his make-up time, Father asserted that there have been occasions when Mother has refused to honor his court-ordered entitlement. *See id.* at 34-35. He opined that the confusion created by Mother's inconsistent compliance has created a rift between the parties. *See id.* at 35. Father testified that the majority of the parties' issues are due to their inability

---

[4] Father testified that when he added his two-year-old daughter as a recipient of these benefits, it "reset the clock" for Children as well; thus, necessitating additional service. N.T., 8/30/24, at 18-19.

to communicate effectively, and that their most significant issues occur due to confusion with his awarded make-up time. ***See id.*** at 62. Finally, Father averred that it is in the Children's best interest to spend equal time with both parents. ***See id.*** at 25.

Mother similarly testified that the current custody arrangement creates confusion with respect to Father's make-up time. ***See id.*** at 97-99. Mother, however, claimed that Father is responsible for this confusion as he often requests to utilize a different weekend for his make-up time than what the Custody Order provides him. ***See id.*** Mother emphasized that awarding her primary physical custody during both the school year and summer vacation, as well as eliminating Father's entitlement to make-up time, would provide the most stability for the Children. ***See id.*** at 112.

During her *in camera* testimony, I.L. also claimed that Father's make-up time causes confusion for the Children. ***See*** N.T., 8/30/24 (Children), at 31. She testified that Father tries to pick different weekends that conflict with Mother's plans. ***See id.*** at 32-33. S.L. testified that the schedule during the school year is not confusing but stated that the summer schedule is problematic. ***See id.***

The Children testified that they raise farm animals at their Mother's home during the year for the fair in Bloomsburg, Pennsylvania.[5] **See id.** at 4-7, 9-11, 29. I.L. testified that she "would like [the summer schedule] to be like how it is during school because when it's a week on, week off, it's hard because []we're working for our 4[-]H animals[.]" **Id.** at 34. S.L. also stated that she would prefer the school year schedule on a permanent basis. **See id.** at 64.

On December 6, 2024, the court entered an order ("Custody Order"), with an accompanying analysis of the 23 Pa.C.S.A. § 5328(a) custody factors, that, *inter alia*, increased Father's partial physical custody award. Specifically, the Custody Order provided a two-week alternating schedule during the school year wherein Father has custody from Wednesday at 5:00 p.m., to Friday at 8:00 a.m. on the first week and from Wednesday at 5:00 p.m. to Monday at 8:00 a.m. on the second week.[6] The court did not alter the summer custody schedule, thereby denying Mother's request to implement a uniform schedule. Moreover, the court implemented the following procedure for Father's make-up time due to his reservist duties:

> 5. Military make-up time – During those times when [Father] is entitled to make-up time for his military deployments, [Father]

---

[5] The Children are members of an organization wherein they participate in a variety of activities including the care of farm animals.

[6] The existing custody order had provided Father the weekend until Sunday at 5:00 p.m.

shall be given weekend make-up time for military service **to be taken on the next weekend or it is forfeited.**

Custody Order, 12/6/24, at 7 (emphasis in original).

On January 6, 2025, Mother timely filed a notice of appeal along with a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). In response, on February 5, 2025, the trial court submitted a Rule 1925(a)(2)(ii) statement, in which it expanded upon the analysis set forth in the December 6, 2024 Custody Order.

On appeal, Mother asserts the following issues for our review:

1. Whether the trial court erred and abused its discretion by denying the request of [Mother] to implement the custody school year schedule year-round, as that denial went against the intelligent, mature and well-reasoned preferences of the [C]hildren and is not in their best interests?

2. Whether the trial court erred and abused its discretion by modifying the custody schedule so that [Father] now has expanded time with the [C]hildren during the school year, as that modification also goes against the preferences of the [C]hildren and is not in their best interests?

3. Whether the trial court erred and abused its discretion by denying Mother's request to eliminate the make-up time that Father had been previously granted, as that denial was also against the expressed preferences of the [C]hildren and is not in their best interests?

Mother's Brief at 13 (suggested answers omitted).

Our standard and scope of review in this context is well-established:

Our standard of review over a custody order is for a gross abuse of discretion. Such an abuse of discretion will only be found if the trial court, in reaching its conclusion, overrides or misapplies the

- 10 -

law, or exercises judgment which is manifestly unreasonable, or reaches a conclusion that is the result of partiality, prejudice, bias, or ill-will as shown by the evidence of record.

In reviewing a custody order, we must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the trial court who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

*Rogowski v. Kirven*, 291 A.3d 50, 60-61 (Pa. Super. 2023) (cleaned up) (citations omitted). "It is not this Court's function to determine whether the trial court reached the 'right' decision; rather, we must consider whether, 'based on the evidence presented, given [*sic*] due deference to the trial court's weight and credibility determinations,' the trial court erred or abused its discretion[.]" *King v. King*, 889 A.2d 630, 632 (Pa. Super. 2005) (quoting *Hanson v. Hanson*, 878 A.2d 127, 129 (Pa. Super. 2005)).

As with all custody-related matters, the Pennsylvania courts' "paramount concern is the best interest of the child involved." *Rogowski*, 291 A.3d at 61 (internal citation and quotation omitted). To that end, our law provides that a court is only empowered to change an existing custody order if the modification will "serve the best interest of the child." 23 Pa.C.S.A. § 5328(a). Specifically, the Custody Act sets forth a number of factors at Section 5338(a) that a court must consider prior to modifying an existing

custody order. ***See E.B. v. D.B.***, 209 A.3d 451, 460 (Pa. Super. 2019). These factors provide as follows:

### § 5328. Factors to consider when awarding custody

**(a) Factors.**—In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving substantial weighted consideration to the factors specified under paragraphs (1), (2), (2.1), and (2.2) which affect the safety of the child, including the following:

(1) Which party is more likely to ensure the safety of the child.

(2) The present and past abuse committed by a party or member of the party's household, which may include past or current protection from abuse or sexual violence protection orders where there has been a finding of abuse.

(2.1) The information set forth in section 5329.1(a) (relating to consideration of child abuse and involvement with protective services).

(2.2) Violent or assaultive behavior committed by a party.

(2.3) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party if contact is consistent with the safety needs of the child.

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life, except if changes are necessary to protect the safety of the child or a party.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of abuse where reasonable safety measures are necessary to protect the safety of the child. A party's reasonable concerns for the safety of the child and the party's reasonable efforts protect the child shall not be

- 12 -

considered attempts to turn the child against the other party. A child's deficient or negative relationship with a party shall not be presumed to be cause by the other party.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child or self from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S.A. § 5328(a).[7]

In order to evidence its consideration of these required elements, custody courts must set forth a discussion of these best-interest factors "prior to the deadline by which a litigant must file a notice of appeal." ***A.V. v. S.T.***,

_____

[7] Section 5328(a) was amended on April 15, 2024, which became effective on August 13, 2024. ***See*** 23 Pa.C.S.A. § 5328 (amended April 15, 2024, P.L. 24, No. 8, § 3, effective in 120 days). The amendments included the addition and/or revision of Section 5328(a)(1), (2), (2.2), (2.3), (4), and (8), all of which relate to the safety needs of children in custody proceedings.

87 A.3d 818, 820 (Pa. Super. 2014). This Court has emphasized that the trial court, as the finder of fact, determines "which factors are most salient and critical in each particular case." *M.J.M. v. M.L.G.*, 63 A.3d 331, 339 (Pa. Super. 2013) (citing *A.D. v. M.A.B.,* 989 A.2d 32, 35-36 (Pa. Super. 2010)). In expressing the reasons for its decision, "there is no required amount of detail for the trial court's explanation; all that is required is that the enumerated factors are considered and that the custody decision is based on those considerations." *M.J.M.* 63 A.3d at 336.

Instantly, the trial court found that Section 5328(a)(1), (2), (2.1), (6), (8), (11), and (14)-(16) were not applicable. Further the court weighed Section 5328(a)(3)-(5), (7), (9), (12), and (13) equally between the parties.[8] *See generally* Trial Court Opinion, 2/5/25. Regarding Section 5328(a)(10), which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child, the court appeared to find this factor slightly favored Mother, and stated the following:

> It would appear to be Mother has more "hands-on" time from the testimony. However, Father testified that he also taught the

---

[8] The trial court did not make any specific findings with respect to Section 5328(a)(2.2) or (2.3). We remind the trial court that it is required to consider "**[a]ll** of the factors listed in section 5328(a) . . . when entering a custody order." *J.R.M. v. J.E.A.,* 33 A.3d 647, 652 (Pa. Super. 2011) (emphasis in original). As no party has objected, and there are no indications that these factors are at all relevant to the instant case, the court's omission of Section 5328(a)(2.2) and (2.3) is not fatal to the Custody Order.

[C]hildren non-traditional skills when they were with him.[9] Father also has another child with his wife and it appears that, coupled with [the Children] and work/military commitment, he does make an impact on [the Children's] lives.

*Id.* at 4-5. In its Rule 1925(a) opinion, the court further expanded upon its rationale, as follows:

Both Mother and Father have submitted proposed custody/visitation schedules. Mother seeks primary custody while Father seeks shared custody. The [c]ourt finds that [] Father's proposal is more realistic and does not punish him for military time, but seeks a resolution to the ongoing conflicts that have arisen between Father and Mother.

What is best for the [C]hildren regarding Father's make-up time seems to be the primary custodial issue. Father and Mother have clashed over vacation time, and make-up time. Father has no power or control over his [m]ilitary time, and has approximately four more years of commitment. Mother's chief complaint is that Father "stockpiles" his make-up leaving little room for her to plan her week.

In an attempt to address the underlying problems, the [c]ourt has addressed when Father will take his military time in order to give Mother consistency and for Father not to "stock-pile" make-up time.

Opinion, 2/5/25, at 6-7. As we discuss further *infra*, we discern no error of law or abuse of discretion with the court's determination.

In her first issue, Mother contends that the court erred when it denied her request for year-round primary physical custody. She asserts that the Children gave mature, intelligent, and well-reasoned preferences. ***See***

_____

[9] With respect to the court's finding regarding "non-traditional skills," according to Stepmother, Father has taught the Children about "hunting," "fishing," and "outdoorsy, survivalist kind of things." N.T., 8/30/24, at 75.

- 15 -

Mother's Brief at 25-26  Mother argues that the court completely ignored the Children's preferences.  *See id.* at 26-27.   However, in its initial opinion accompanying the December 6, 2024 order, the trial court stated that "the Children did not express a preference."  *Id.* at 26 (citing Custody Order, 12/6/24, at 4).

Mother focuses her argument upon Section 5328(a)(7), which addresses the well-reasoned preference of the child, based on the child's maturity and judgment.  *See id.* at 22-27; 23 Pa.C.S.A. § 5328(a)(7).  Mother cites to testimony from I.L. wherein she stated that "I would like it to be like how it is during school[.]"  *See* Mother's Brief at 23 (citing N.T., 8/30/24 (Children), at 34).

Mother also highlights the following exchange between the trial court and the Children:

> The Court: You think the summers [are] too long because you're not with your animals?
>
> I.L.: Yeah.
>
> The Court: What about the school year?  Does that work out pretty good?
>
> I.L.: Yeah, it's fine.
>
> The Court: It's fine?  Okay.  Do you think so, too?
>
> S.L.: Yep.
>
> The Court:  What do you think about the summer?
>
> S.L.: Yeah, the weeks are, like, too long.  I don't have enough time to practice with my – well, do stuff with my animals.  And

- 16 -

> there's, like, nothing really, really good to do at [Father's] house. So, like, I'm like, bored for a week, and then I'm at [Mother's house] for a week, that's not really boring.
>
> The Court: So, it might be easier if you were bored for only three days or so, instead of a week, right?
>
> S.L.: Yeah. [Father] usually is like, "oh, I want to spend this week with you, because I never get to spend time with you." And, then we end up staying at the house for the whole day just on our phones, and he does nothing with us.

Mother's Brief at 24 (citing N.T., 8/30/24 (Children), at 45-46).

While the trial court initially stated that the Children did not express a preference in its analysis of Section 5328(a)(7) accompanying the December 6, 2024 Custody Order, the court clarified its finding in its Rule 1925(a) opinion, as follows:

> The [C]hildren did not express a reliable preference and it is the opinion of the [c]ourt that they were speaking their Mother's wishes, which would shift much more custody time to Mother. While one daughter did indicate that she would prefer to be at her Mother's more to take care of her animals, the [c]ourt does not find this to be sufficient reason to reduce Father's time when there has been no testimony from Mother that this is an issue.

Trial Court Opinion, 2/5/25, at 4. Based upon the foregoing, it is clear that the court appropriately considered the Children's preferences.

Further, it was not unreasonable for the court to determine that the Children's stated preferences were unreliable. While the Children expressed a desire to be at Mother's during the summer because they are often bored at Father's home and are away from the animals they are raising, the majority of their misgivings were framed with obvious deference to Mother's wishes.

During the *in camera* interview, while voicing their displeasure concerning the confusion surrounding Father's make-up time, S.L. referred to a conversation with Mother stating "[a]nd, our mom said, like, in July [Father] tried to take, like, the whole month, except, like, one week [because of make-up time]." N.T., 8/30/24 (Children), at 32. The Children also described their confusion regarding Father's make-up time in general and non-specific terms, stating that it is "just all crazy" and "annoying and kind of stupid". *Id.* at 31-33. The Children further referred to plans Mother made with them that were ultimately cancelled due to Father's make-up time. *See id.* at 32. Accordingly, it is not unreasonable for the court to find their preferences had been unduly influenced by Mother's opinion and, therefore, were unreliable.

To the extent that Mother takes issue with the lack of weight the trial court afforded the Children's testimony pursuant to Section 5328(a)(7), she concomitantly acknowledges in her brief that "the trial court does not have to adopt the [C]hildren's preference as its order." Mother's Brief at 26. As related *supra*, the trial court, as the finder of fact, determines "which factors are most salient and critical in each particular case." **M.J.M.** 63 A.3d at 339 (citing **A.D.**, 989 A.2d at 35-36). The court reasonably determined that the Children's preferences were not reliable and not a "sufficient reason to reduce Father's time." Trial Court Opinion, 2/5/25, at 4. Therefore, the court did not err or abuse its discretion when it declined to adopt a year-round custody schedule as proposed by Mother.

In her second issue, Mother asserts that the trial court erred and abused its discretion by expanding Father's custody schedule during the school year. Specifically, she takes issue with the court awarding Father extended weekends during the school year, until Monday morning.[10] Mother argues that Father did not request shared physical custody until he testified at trial as his initial petition merely requested clarification of the vacation schedule. *See* Mother's Brief at 28. She further contends that the Children were not asked about their opinion on expanding Father's custody. She contends that Father does not help the Children with their homework. *See id.* In support of her arguments, Mother emphasizes that the court found Section 5328(a)(10), which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child, slightly favored her.

Preliminarily, we note that, "generally, the appropriate manner in which to request modification of a custody order is to file a petition for modification[.]" *C.A.J. v. D.S.M.*, 136 A.3d 504, 507 (Pa. Super. 2016). Nonetheless, "this does not prevent the trial court, under appropriate circumstances to alter a custody/visitation [o]rder when it is in the best interest of the child to do so." *Guadagnino v. Montie*, 646 A.2d 1257, 1262 (Pa. Super. 1994). To that end, this Court has explained that "if notice of the

_____

[10] The existing custody order required Father to return the Children to Mother on his weekends by Sunday at 5:00 p.m.

- 19 -

proceeding adequately advises a party that custody will be at issue, a court may entertain the request to permanently modify a custody order after hearing in that proceeding." *C.A.J.*, 136 A.3d at 507.

Instantly, Mother herself requested modification of physical custody and, thus, was on notice that the trial court would be considering such a modification. *See id*. While Father did not initially request equally shared physical custody in his September 19, 2023 modification petition, he clearly testified that he desired equally shared physical custody during the August 30, 2024 hearing. *See* N.T., 8/30/24, 25. Since there is no question that Mother was on sufficient notice that modification of physical custody was being considered in this matter, we observe no error in the trial court modifying the physical custody award in the instant case. *See Shiflet v. Shiflet*, 305 A.3d 983 (Table), at *6 (Pa. Super. 2023) (holding that party who explicitly sought modification of legal custody received sufficient notice of potential modification of legal custody award).

Further, Mother's assertion that the Children were not asked about Father's request for shared physical custody does not warrant relief. We emphasize that Mother's counsel had the opportunity to interview the Children following the court's questions and opted not to ask them their opinion on expanding Father's custody time during the school year. As detailed above in our analysis of Section 5328(a)(7), we also note that the trial court was within

its discretion to disregard the Children's preferences under the circumstances presented.

Finally, Mother's argument regarding Section 5328(a)(10) amounts to a bald request for this Court to reweigh the evidence of record. As referenced *supra*, the trial court appears to weigh the factor slightly in favor of Mother. **See** Trial Court Opinion, 2/5/25, at 4-5. However, it is clear that this slight advantage did not prevent the court from expanding Father's custody time during the school year, which notably still does not amount to shared physical custody. The court did not find the factor salient and was well within its discretion to make this determination. **See M.J.M.** 63 A.3d at 339. Based on the foregoing, Mother's second issue fails.

In her final issue, Mother claims that the trial court erred and abused its discretion by not eliminating the make-up time Father was awarded in the existing custody order. Mother once again focuses on the testimony of the Children during the *in camera* interview, wherein they told the trial court that they did not like Father's make-up time. **See** Mother's Brief at 29-31. Mother asserts that because the Children stated that they do not like the make-up time, "there was no good reason for the trial court to decline to eliminate it." *Id.* at 30. We disagree.

As related *supra*, the court was not bound to follow the wishes of the Children, and its analysis of Section 5328(a)(7) was not unreasonable. Further, the Children's testimony regarding Father's make-up time largely

refers to the confusion the existing custody order provided when Father would take his make-up time and his requests to take alternative weekends. It is clear the court considered these issues and in so doing mandated that Father "shall be given weekend make-up time for military service **to be taken on the next weekend or it is forfeited.**" Trial Court Opinion, 12/6/24, at 7 (emphasis in original). Instead of limiting Father's time due to his service, the trial court created a concise, specific procedure for Father to make-up his custodial time, or risk forfeiting that time. Therefore, we discern no error of law or abuse of discretion in the court's decision to decline Mother's request to eliminate Father's make-up time.

Based on the foregoing, we conclude that the trial court did not abuse its discretion or err as a matter of law in entering the December 6, 2024 Custody Order. Accordingly, we affirm the order of the trial court.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 07/08/2025

- 22 -