J-A29025-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IGOR GOLALIC | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| SANJA SRETENOVIC GOLALIC | : | No. 1034 WDA 2025 |

Appeal from the Order Entered August 21, 2025
In the Court of Common Pleas of Allegheny County Family Court at
No(s):  FD No. 15-009369-006

BEFORE:  OLSON, J., DUBOW, J., and BENDER, P.J.E.

MEMORANDUM BY OLSON, J.:            **FILED: February 27, 2026**

Appellant, Igor Golalic ("Father"), appeals from the August 21, 2025 order directing that he and Sanja Sretenovic Golalic ("Mother") (collectively, "Parents") enroll their eight-year-old child, T.G., in Colfax Elementary School ("Colfax"), unless they agree otherwise.  After careful review, we affirm.

The record reveals the following relevant factual and procedural history. Mother and Father were married in January 2010 and share three minor sons, S.G. (born in September 2011), M.G. (born in June 2013), and T.G. (born in October 2016) (collectively, "the Children").  Mother initiated the underlying divorce and custody action against Father in 2015, prior to T.G.'s birth. Parents agreed to engage in marital counseling and did not pursue the divorce

action at the time. *See* Orders, 12/16/15 and 1/14/16.[1] Likewise, Mother's complaint for custody was summarily dismissed for lack of pursuit. *See* Order, 12/28/15. Despite their ultimate separation in 2017, Parents continued to reside with S.G., M.G., and T.G. following his birth, in the marital home in the Squirrel Hill section of Pittsburgh until approximately June 2023.[2] *See* N.T., 10/3/24, at 15, 24.

On June 20, 2023, Mother sought and obtained a temporary protection from abuse order against Father that excluded him from the Squirrel Hill home. *See* Temporary Protection from Abuse Order, 6/20/23, at ¶ 2. Mother alleged that Father threatened and chased her and, subsequently, absconded with her car, stranding her and the Children. *See* Temporary Protection from Abuse Petition, 6/20/23, at ¶ 11. Parents resolved the protection from abuse action by consent order which, *inter alia*, awarded Mother primary physical custody and Father partial physical custody three weekends per month on an interim basis. *See* Order, 8/1/23.

---

[1] Except for the subject order on appeal, we reference and cite all orders herein not by their issue date or filed dated but by their date of entry as reflected on the docket.

[2] It is undisputed that Parents additionally had a residence in Columbus, Ohio until approximately 2022, where Father spent time due to his former employment, as well as a residence in Ligonier, Pennsylvania. *See* Complaint to Confirm Primary Physical Custody and Joint Legal Custody, 12/3/15, at ¶¶ 2, 3; Petition for Exclusive Possession of the Marital Residence, 9/28/23, at ¶ 7; Petition for Special Relief - Sale of Ligonier Residence, 8/13/25, at ¶ 16; *see also* N.T., 10/3/24, at 22, 23; N.T., 10/4/24, at 305, 328-29.

In the meantime, on July 3, 2023, Father filed a complaint for custody seeking shared custody of the Children, then eleven, ten, and six years old. **See** Complaint for Shared Custody, 7/3/23, at 5. At that time, while Mother remained in the marital home in Squirrel Hill, Father resided in Parents' residence in Ligonier.[3] **See id.** at ¶¶ 4, 5; **see also** N.T., 10/4/24, at 328-29. The Children attended school at Shady Side Academy ("Shady Side"), a private school with campuses located in the Fox Chapel and Point Breeze neighborhoods of Pittsburgh. Specifically, S.G. attended the middle school campus in Fox Chapel, and M.G. and T.G. attended the elementary school campus in Point Breeze. **See** N.T., 10/26/23, at 5-6. Relevant to this appeal, the Children continued to attend Shady Side through the 2024-25 school year, as ordered by the court. **See** Order, 8/21/24; **see also** N.T., 10/4/24, at 309-12, 316-17.

The court ultimately entered an agreed-upon final custody order on April 28, 2025, which awarded the parties shared legal and physical custody on a 4-3-3-4 schedule during the 2025-26 school year, with an alternating weekly schedule during the summer.[4] **See** Order, 4/28/25, at ¶¶ 4, 5. The order

---

[3] At some time thereafter, unspecified in the certified record, Father also obtained an apartment in Fox Chapel. **See** N.T., 10/3/24, at 15, 24; N.T., 11/13/24, at 430-31.

[4] Specifically, as to the custodial schedule during the school year, the order provided, as follows:
*(Footnote Continued Next Page)*

also addressed the specific schools that the Children were to attend during the 2025-26 school year. S.G., M.G., and T.G., were then in seventh, fifth, and second grades, respectively. In pertinent part, the order provided, as follows:

> 11. S.G. and M.G. shall attend [Shady Side] through and including the 2025-26 academic year, at Mother's sole expense.[5] T.G. shall attend Fox Chapel School District (O'Hara Elementary [School ("O'Hara")]) for the 2025-26 school year and thereafter.
>
> 12. Unless the parties agree otherwise, or order of court, all the children shall attend Fox Chapel School District for the 2026-27 academic year and thereafter, so long as one party or the other lives in the district.

Order, 4/28/25 (cleaned up). Further, of relevance, the order dictated that neither party was to "relocate" in contravention of the requirements of 23

---

> a. Mother shall exercise custody of the Children every week from Monday after school (or 3 p.m. if there is no school) until Thursday morning until return to school (or 3 p.m. if there is no school);
>
> b. Father shall exercise custody of the Children every week from Friday after school (or 3 p.m. if there is no school) until Monday morning return to school (or 3 p.m. if there is no school).
>
> c. The parties shall alternate the Thursday custodial period, from Thursday after school (or 3 p.m. if there is no school) until Friday return to school (or 3 p.m. if there is no school), with Father exercising the first Thursday custodial period following the first day of school.

Order, 4/28/25, at ¶ 5.

[5] As best we can discern, S.G. and M.G. would both be attending Shady Side's Fox Chapel campus.

Pa.C.S.A. § 5337.[6] *Id.* at ¶ 13. In addition, Mother was permitted to maintain possession of the marital home in Squirrel Hill until October 1, 2025. *See id.* at ¶ 14.

In or about July 2025, Father moved within the Fox Chapel School District. *See* Father's Response to Mother's Petition for Special Relief, 8/14/25, at ¶¶ 5, 6. Father averred that he relied on advertising that children residing in his new neighborhood attend O'Hara. *See id.* at ¶ 6. However, on July 14, 2025, the school district advised Father that T.G. was assigned to attend Kerr Elementary School ("Kerr"). *See id.* at ¶ 7. Significantly, the solicitor from the school district explained to Father that, due to capacity, children from his community are, in fact, assigned to Kerr, as opposed to O'Hara. *See id.* at ¶ 8.

On August 4, 2025, Mother served the subject petition for special relief limited to the discrete issue of which school T.G. will attend in 2025-26, as he was unable to attend O'Hara due to Father's "relocation." Petition for Special Relief-Custody-Return to Status Quo, 8/13/25, at ¶¶ 9, 10, 14. According to Mother, the provision that T.G. attend O'Hara was specifically negotiated for the parties' convenience. *See id.* at ¶ 5. She argued that it would be "utterly impossible geographically" for her to transport the parties' two older children

---

[6] "Relocation" is defined as "[a] change in a residence of the child which significantly impairs the ability of a nonrelocating party to exercise custodial rights." 23 Pa.C.S.A. § 5322.

to Shady Side and then take T.G. to Kerr.[7]  *Id.* at ¶ 13; *see id.* at ¶ 6.  As such, Mother requested T.G. continue attending Shady Side during the 2025-26 school year at Father's expense.  *See id.* at ¶¶ 13, 14.

Father filed a response and asserted that Mother's sole complaint related to geography.  *See* Father's Response to Mother's Petition for Special Relief, 8/14/25, at ¶ 9.  Notably, Father alleged that Kerr was only an additional 1.7 miles from Shady Side as compared to O'Hara, and that Mother could drop T.G. off at the bus stop proximate to his home.  *See id.* at ¶¶ 12-15. Moreover, Father argued that Mother ignores that Shady Side starts at 8:00 a.m. and Kerr does not start until 8:55 a.m.  *See id.* at ¶ 16.  Lastly, Father asserted that Mother was improperly attempting to modify the custody order in motions court.  *See id.* at ¶ 18.

The court held oral argument on Mother's petition for special relief on August 11, 2025; at this time, school was set to begin in less than two weeks. *See* Trial Court Opinion, 9/9/25, at 5.  Parents were each represented by counsel and raised their logistical and financial arguments with respect to school choice for T.G.  *See* Trial Court Opinion, 9/9/25, at 2-3, 5.  Neither, however, addressed or discussed the substantive educational merits of any of

---

[7] We note that Mother testified that, during the 2024-25 school year, S.G. took the bus to and from Shady Side's Fox Chapel campus.  She drove M.G. and T.G. to Shady Side's Point Breeze campus, but they sometimes took the bus home.  *See* N.T., 10/4/24, at 309-10.  We surmise that Mother planned to drive the Children for the 2025-26 school year during her custodial time. *See* Petition for Special Relief-Custody-Return to Status Quo, 8/13/25, at ¶ 5.

- 6 -

the subject schools. *See id.* at 3. Further, during the hearing, Mother presented the alternative option of T.G. attending Colfax, a public charter school for gifted children located in Squirrel Hill.[8] *See id.* at 2. By order dated August 11, 2025, and entered on August 21, 2025, the court determined that, unless the parties agree otherwise, T.G. shall attend Colfax. *See* Order, 8/21/25.

Thereafter, Father filed an emergency motion for reconsideration on August 13, 2025, to which Mother responded.[9] Pursuant to order of August 14, 2025, the court denied Father's request for reconsideration. However, the order further provided, "[I]n the event Mother does not find housing where [T.G.] can attend Colfax and as a result [T.G.] has to change schools in the fall, Father will immediately be granted sole legal custody for the choice of [T.G.'s] school." Order, 8/14/25. We deem this to be a permissible modification of the August 11, 2025 order. *See* 42 Pa.C.S.A. § 5505 ("Except

_____

[8] The record does not specify the residency requirements, if any, for attendance at Colfax.

[9] We observe that copies of this motion and response are contained in the reproduced record but not the certified record. Since the veracity of these filings are not in dispute, we rely upon the copies in the reproduced record. *See Commonwealth v. Barnett*, 121 A.3d 534, 544 n.3 (Pa. Super. 2015) ("While this Court generally may only consider facts that have been duly certified in the record, where the accuracy of a document is undisputed and contained in the reproduced record, we may consider it"). We remind Appellant's counsel that "the responsibility rests upon appellant to ensure that the record certified on appeal is complete …". *Commonwealth v. Holston*, 211 A.3d 1264, 1276 (Pa. Super. 2019) (*en banc*).

as otherwise provided or prescribed by law, a court upon notice to the parties may modify or rescind any order within 30 days after its entry, notwithstanding the prior termination of any term of court, if no appeal from such order has been taken or allowed.").

On August 14, 2025, Father timely filed a notice of appeal along with a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). In response, the trial court issued a Rule 1925(a) opinion on September 10, 2025. Therein, the court declared that "because of this appeal, this court lost jurisdiction and therefore could not schedule a school choice hearing." Trial Court Opinion, 9/9/25, at 3.

On September 16, 2025, Mother filed an application to quash Father's appeal, wherein she asserted that the Trial Court's order dated August 11, 2025 (as modified by the order of August 14, 2025)[10] was not final since the trial court was allegedly denied the opportunity to schedule "a final hearing on school choice" due to Father's appeal. Application to Quash Appeal, 9/16/25, at ¶¶ 10-14. In support of this position, Mother cited precedent providing that a custody order "'will be considered final and appealable only if it is both: (1) entered after the court has completed its hearing on the merits; and (2) intended by the court to constitute a complete resolution of the custody claims

_____

[10] For ease of discussion, we will refer to this order as "the August 21, 2025" order, as the initial order was not entered until August 21, 2025.

- 8 -

pending between the parties.'" *Id.* at ¶ 12 (quoting *G.B. v. M.M.B.*, 670 A.2d 714, 720 (Pa. Super. 1996). On October 6, 2025, this Court denied Mother's petition without prejudice to her ability to raise the issue in her brief, so long as it was "properly preserved." Order, 10/6/25.

On appeal, Father raises the following issues for our review:

1. Did the trial court lack the authority to modify a custody order in motions court when there was no underlying custody modification petition pending?

2. Did the trial court abuse its discretion by modifying the custody order without a hearing and by changing [T.G.'s] school to a district that was not proposed by Mother until her counsel did so orally in motions court?

3. Did the trial court [] abuse its discretion in effectively granting Mother sole legal custody for purposes of school choice in motions court and without a hearing?

Father's Brief at 3 (cleaned up) (suggested answers omitted).

Preliminarily, we note that Mother's brief raises her request that this Court quash Father's appeal due to lack of finality. Specifically, Mother contends that the subject order was not a final order because the trial court intended to schedule a subsequent hearing, relying upon the statement in the trial court's opinion concerning a "school choice hearing." *See* Mother's Brief at 18; Trial Court Opinion, 9/9/25, at 3. Thus, Mother maintains that the August 21, 2025 order "was not a final order and thus Father's appeal is interlocutory and should also be quashed." Mother's Brief at 18. We disagree.

It is well-settled that "[a]n appeal lies only from a final order, unless permitted by rule or statute." *Stewart v. Foxworth*, 65 A.3d 468, 471 (Pa.

Super. 2013). Generally, a final order is one that disposes of all claims and all parties. *See* Pa.R.A.P. 341(b)(1). With respect to the finality of custody orders, however, "we recognize the uniqueness of custody orders compared to orders in other civil actions." *Kassam v. Kassam*, 811 A.2d 1023, 1025 (Pa. Super. 2022). Specifically, [c]hild custody orders are temporary in nature and always subject to change if new circumstances affect the welfare of a child." *G.B.*, 670 A.2d at 718 n.9. While *G.B.* and its progeny remain good law, this Court has also held that "a custody order that **anticipates** future hearings that could take place on **application** of one of the parties is a final, appealable order." *Wagner v. Wagner*, 887 A.2d 282, 285 (Pa. Super. 2005) (citing *Parker v. MacDonald*, 496 A.2d 1244, 1247 (Pa. Super. 1985)) (emphasis in original).

Contrary to Mother's arguments, the trial court's August 21, 2025 order does not schedule, or even contemplate, any future custody hearings. *See* Order, 8/21/25. Further, our review of the certified record reveals no indication that the trial court scheduled, or even contemplated scheduling, a future hearing at the time of the issuance of the subject order. Indeed, the only indication that the trial court anticipated future proceedings appears in the above-quoted passage from its later-filed Rule 1925(a)(2)(ii) opinion. *See* Trial Court Opinion, 9/9/25, at 3.

We do not believe that the court's belated assertion regarding the mere possibility of a school choice hearing changes the finality of the August 21,

2025 order. Indeed, the notion that the trial court anticipated scheduling a hearing on these issues is incongruous with the court's reasoning that, as the Children's school year would be starting in less than two weeks, "there was no time for a formal hearing." Trial Court Opinion, 9/9/25, at 5. To the extent that Mother contends the trial court intended to schedule a school choice hearing, we conclude that the record does not support such a conclusion. Even assuming, *arguendo*, that the trial court "anticipated" the potential for future proceedings on the Children's schooling that could occur as a result of Parents' filings, the August 21, 2025 order remains final and appealable. **See Wagner**, 887 A.2d at 285. Thus, we deny Mother's renewed application to quash Father's appeal.

Turning to the merits of Father's appeal, we first set forth our well-settled standard and scope of review. "We review a trial court's determination in a custody case for an abuse of discretion, and our scope of review is broad." **S.W.D. v. S.A.R.**, 96 A.3d 396, 400 (Pa. Super. 2014). As with all custody-related matters, the Pennsylvania courts' "paramount concern is the best interest of the child involved." **Rogowski v. Kirven**, 291 A.3d 50, 61 (Pa. Super. 2023) (quotation marks and citations omitted).

"It is not this Court's function to determine whether the trial court reached the 'right' decision; rather, we must consider whether, 'based on the evidence presented, [giving] due deference to the trial court's weight and credibility determinations,' the trial court erred or abused its discretion." **King**

- 11 -

*v. King*, 889 A.2d 630, 632 (Pa. Super. 2005) (quoting *Hanson v. Hanson*, 878 A.2d 127, 129 (Pa. Super. 2005)). "Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law[] or are unreasonable in light of the sustainable findings of the trial court." *Rogowski*, 291 A.3d at 60-61 (citation omitted).

In his first issue, Father contends that the trial court erroneously modified the April 28, 2025 custody order by ordering T.G. to attend Colfax since there was no formal custody modification petition pending before it. *See* Father's Brief at 8. While Father concedes that the trial court has "jurisdiction to enter custody orders pursuant to 23 Pa.C.S.A. §§ 5401, *et seq.*," and "general authority to dispose of custody disputes," he maintains that "the court's jurisdiction is only triggered when invoked, and then only upon proper petition and notice." Father's Brief at 8, 11-12. In support of his position, Father relies upon *P.H.D. v. R.R.D.*, 56 A.3d 702, 703, 708 (Pa. Super. 2012). *See* Father's Brief at 8.

*P.H.D.* stands for the general proposition that "a trial court may not permanently modify a custody order without having a petition for modification before it." *P.H.D.*, 56 A.3d at 706 (citing *Langendorfer v. Spearman*, 797 A.2d 303, 308 (Pa. Super. 2002)). In *P.H.D.*, a trial court was adjudicating a contempt petition filed by one parent against the other. The contempt petition did not request modification of custody. Nonetheless, the trial court *sua*

*sponte* modified portions of the governing custody order pertaining to the parties' physical custody of their children. ***See id.*** at 704-05. On appeal, this Court vacated after concluding that the appealing parent had no notice that modification of custody was contemplated and, thus, "had no opportunity to prepare for a modification hearing." ***Id.*** at 708. We do not find ***P.H.D*** to be analogous to the instant case.

Instantly, there is no indication that either party sought a modification of custody that was not contained in a valid pleading. To the contrary, Mother raised the discrete issue of T.G.'s school choice in a petition for special relief pursuant to Pa.R.C.P. 1915.13 ("Special Relief"). ***See*** Petition for Special Relief, 8/12/25, at ¶¶ 1-14. Under Rule 1915.13, trial courts are granted "authority" to "address emergency situations." ***S.W.D.***, 96 A.3d at 405. Ordinarily, "[w]here a court temporarily modifies a custody order under the special relief provision of Rule 1915.13, its' order may only serve as an interim or temporary measure until the parties can prepare to resolve more permanently the custody issue at hand." ***Id.*** This Court, however, has recognized that a party may seek modification of custody in a Rule 1915.13 petition for special relief, so long as the pleading apprises the opposing party that the challenged issue is being raised. We explained:

> While it is the appropriate practice under the Act and the Rules of Civil Procedure to file a pleading entitled a "petition to modify custody" to seek modification of a custody order, this Court has held nonetheless, that if notice of the proceeding adequately advises a party that custody will be at issue, a court may entertain

- 13 -

the request to permanently modify a custody order after hearing in that proceeding.

*Id.* at 405. Here, Mother's petition for special relief provided full and fair notice to Father that the issue of T.G.'s school choice was to be litigated. As such, Father had adequate notice of the proposed modification and there was no requirement that Mother file a formal petition to modify custody. *See* *S.W.D.*, 96 A.3d at 406 (citing *Guadagnino v. Montie*, 646 A.2d 1257, 1262 (Pa. Super. 1994)). No relief is due.

We now turn to address Father's last two issues together as they are interrelated and were addressed collectively by the trial court. Specifically, Father argues that the trial court abused its discretion and deprived him of due process by considering Mother's petition for special relief without a formal hearing or allegedly following pre-trial procedures.[11] *See* Father's Brief at 14-19 ("Father was deprived of the many procedural safeguards that attach to a proper petition for modification of custody, such as the right to a hearing . . . and the right to pre-trial procedures") (citing Pa.R.C.P. 1915.4-3 and 1915.4-4). He also continues to contend that Mother's petition for special relief failed to explicitly mention Colfax. As a result, he maintains that he was unprepared and did not have a meaningful opportunity to address the issue of T.G. attending Colfax. *See id.*

---

[11] To the extent Father repeats his arguments regarding the lack of a formal petition in this portion of his arguments, we will not address them again.

Initially, there is no indication in the certified record that Father made any objection on the basis of due process at oral argument, or in filings to the trial court. Indeed, he acknowledges that he did not raise these due process arguments until his subsequent emergency petition for reconsideration. *See id.* at 10. Based upon Father's failure to raise these arguments in the trial court, they are waived pursuant to our Rules of Appellate Procedure. *See* Pa.R.A.P. 302(a) ("Issues not raised in the trial court are waived and cannot be raised for the first time on appeal."). It is also well-established that an issue raised for the first time in a motion for reconsideration is not preserved for appellate review in this Court. *See Stange v. Janssen Pharms., Inc.*, 179 A.3d 45, 64 n.7 (Pa. Super. 2018); *Meyer-Chatfield Corp. v. Bank Fin. Servs. Grp.*, 143 A.3d 930, 938 n.4 (Pa. Super. 2016); *Rabatin v. Allied Glove Corp.*, 24 A.3d 388, 391 (Pa. Super. 2011).

Even assuming, *arguendo*, that Father preserved these arguments for review, he is not entitled to relief. It is axiomatic that "due process is required during custody proceedings." *E.B. v. D.B.*, 209 A.3d 451, 463 (Pa. Super. 2019). This Court has explained the particular requirements of due process:

> We have previously described due process as "a concept incapable of exact definition. Rather, it is a flexible notion which calls for such procedural safeguards as a particular situation demands to ensure fundamental fairness to a potentially aggrieved litigant." *Plowman [v. Plowman]*, 597 A.2d [701,] 705 [(Pa. Super. 1991)]. "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Id.* (citing *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976)). This means that "[i]n almost every setting

> where important decisions turn on questions of fact, due process requires an opportunity to confront and cross-examine witnesses." *Id.* (citation omitted).

*Id.*

As it relates to Father's claims of deprivation of due process, the trial court determined that "Father had adequate notice and opportunity to address the issue of which school T.G. [shall] attend," reasoning as follows:

> Father was timely presented with a petition for special relief in which Mother objected to T.G. attending a school to which she did not consent. Father filed a written response to the petition contesting Mother's petition. Father's counsel appeared at presentation of the motion for special relief and advocated for T.G. to attend Kerr Elementary. Mother's petition requested that T.G. attend [Shady Side] Academy with his two older siblings at Father's sole expense. At the argument, Mother offered as an alternative that T.G. attend Colfax, a Pittsburgh public charter school for gifted children near her residence. Father continued to advocate for T.G. to attend Kerr Elementary. As school was scheduled to begin in less than two weeks, there was no time for a formal hearing. Nor did Father request one. . . .

Trial Court Opinion, 9/9/25, at 4-5 (cleaned up). We discern no error.

Significantly, Father had notice and an opportunity to be heard. Indeed, Father, who was represented by counsel, was served with and responded to Mother's petition for special relief and the immediate issue of T.G.'s school choice in writing and at oral argument. Likewise, the trial court disposed of Mother's petition for special relief in accordance with the Pennsylvania Rules of Civil Procedure, which allow for the filing and disposition of a petition for special relief without an evidentiary hearing. While an evidentiary hearing is permitted, it is not mandatory. *See* Pa.R.C.P. 1915.13; Pa.R.C.P.

- 16 -

208.4(a)(1), (2)(v) (providing, in part, that a court **may**, upon consideration, enter an order disposing of a motion or hold an evidentiary hearing); ***see also***

***M.J.S. v. B.B.***, 172 A.3d 651, 655 (Pa. Super. 2017) ("Rule 1915.13 does not

. . . require that the trial court schedule a hearing or listen to argument before special relief is awarded. Indeed, pursuant to Rule 1915.13, the court may grant relief *sua sponte*") (citation omitted). Further, the court did not effectively award Mother sole legal custody as it pertains to T.G.'s school choice. As indicated above, the court made a specific determination as to T.G.'s school, *i.e.* T.G. should attend Colfax.[12] As such, Father's second and third claims are without merit.

For the foregoing reasons, we affirm the trial court's order.

Order affirmed.

Judgment Entered.

*Benjamin D. Kohler*

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 02/27/2026

_____

[12] To the extent the trial court modified the subject order pursuant to Father's emergency petition for reconsideration, we conclude that the court maintained this specific determination as to T.G.'s school choice. Any provision regarding legal custody limited to T.G.'s school is speculative and purely hypothetical. Moreover, it favors Father.

- 17 -